Tab A

This redacted version of IBM's interrogatory responses shields from view personally identifiable information (last names of individuals whose dates of birth are disclosed); confidential personnel information relating to Plaintiff, and confidential IBM information.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANDREW G. TSOUNOS,** | ) | **Civil Action No. 17-409** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Hon. David R. Cercone** |
| **vs.** | ) | |
| | ) | |
| **INTERNATIONAL BUSINESS** | ) | |
| **MACHINES CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S
## FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant

International Business Machines Corporation ("IBM" or "Defendant") hereby objects and

timely responds as follows to the First Set of Interrogatories served by the Plaintiff Andrew G.

Tsounos ("Plaintiff") on May 30, 2017.

## GENERAL OBJECTIONS

The following General Objections are incorporated by reference into each and every

answer provided by Defendant whether specifically mentioned or not. The identification of

specific General Objections or other objections in a given answer is not intended as, nor may it

be construed to be, a waiver or exclusion of all other General Objections.

1.      Defendant objects to the First Set of Interrogatories to the extent that any

interrogatories seek to impose burdens greater than those required by the Federal Rules of Civil

Procedure (including, for example, by disguising multiple interrogatories as one in an attempt to

compel IBM to answer more than 25 interrogatories without agreement of the parties or leave of

court), applicable local rules, and/or the Court's standing and/or case management order(s).

Defendant responds consistent with the Federal Rules of Civil Procedure, any applicable local rules, and the Court's standing and/or case management order(s) ), and subject to its threshold objection regarding the scope and breadth of discovery.

2.      Defendant objects to the First Set of Interrogatories to the extent that any interrogatories are not appropriately limited in scope to the relevant time periods, organizations, positions, and locations at issue in this case.

3.      Defendant objects to the First Set of Interrogatories to the extent that any interrogatories seek confidential information or confidential documents, including documents containing any personnel-related information concerning any nonparty employees; information that constitutes or contains commercially sensitive confidential business information; and/or other information belonging to Defendant, and/or to third parties, the disclosure of which could cause competitive harm to Defendant.

4.      Defendant objects to the First Set of Interrogatories to the extent that any interrogatories seek information or documents not relevant to the claims or defenses of either party.

5.      Defendant objects to the First Set of Interrogatories to the extent that any interrogatories seek information or documents not proportional to the needs of the case.

6.      Defendant objects to the First Set of Interrogatories to the extent that any interrogatories seek to invade the attorney-client privilege or the attorney work-product doctrine (collectively "privileges").  To the extent that information or documents is/are disclosed that constitutes inadvertent disclosure of privileged information, such disclosure shall not constitute a waiver of the privileges, and Defendant reserves the right to demand and obtain the return of any inadvertently produced and/or disclosed information and/or documents.

7.      Defendant objects to the First Set of Interrogatories to the extent that any interrogatories request information and documents contained in Plaintiff's files or within Plaintiff's knowledge or in public sources equally available to Plaintiff.

8.      Defendant objects to the First Set of Interrogatories to the extent that any interrogatories request information and documents within the possession of third parties equally available to Plaintiff as to Defendant.

9.      Defendant objects to the First Set of Interrogatories to the extent that any interrogatories seek to define terms and/or characterize the evidence in this case.  To the extent that Defendant adopts any terms used by Plaintiff in the First Set of Interrogatories, such adoption is specifically limited solely to these responses.

10.      Defendant objects to any interrogatory to the extent that any interrogatories are vague, overly broad, ambiguous, or written in a form that is confusing or potentially misleading.

11.      Defendant's answers to this First Set of Interrogatories do not constitute admissions or acknowledgements that any information or document sought is within the proper scope of discovery, and Defendant makes these answers without waiving its right to object to the admissibility in evidence of these answers or the information or documents produced herewith or to object to further discovery related to subject matters encompassed within Plaintiff's First Set of Interrogatories.

12.      Defendant makes these responses to the best of its present knowledge based upon a reasonable investigation to date.  Because its investigation in this action is ongoing, Defendant reserves the right to modify, supplement, or amend the answers contained herein as any additional facts may become known during the course of such investigation or discovery.

These General Objections apply to and are incorporated by reference in each and every response, whether or not specifically mentioned.

<u>**ANSWERS TO INTERROGATORIES**</u>

1.      Identify each person providing information, assistance and/or who was consulted in any way in connection with answering any of the following interrogatories.  For each such person, specify each interrogatory for which he or she provided information, assistance and/or consultation, as well as the nature and content of the information, assistance and/or consultation provided.

<u>**ANSWER:**</u>  IBM objects to this Interrogatory because it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine.  Subject to, and without waiving this objection, IBM identifies the following individuals: David Kevnick, Scott Dial and Ryan Zombo, each of whom provided information regarding the selection of Plaintiff to be laid off as part of a Resource Action, and Messrs. Kevnick and Zombo with respect to hiring decisions made regarding two positions tied to Open Source Analytics.

2.      Identify the person who made the final decision to terminate Plaintiff, state whether the decision was reviewed by any other person at IBM, and if so, by whom, and state the purposes and conclusions of such review.

<u>**ANSWER:**</u>  IBM objects to this Interrogatory as being vague and ambiguous because it is unclear what is meant by "final decision" and "reviewed."  There is more than one potential meaning of these terms, at least in the context of this case, and Defendant responds consistent with its own understanding of these undefined terms.  Subject to, and without waiving the foregoing objection and the General Objections set forth above, IBM responds that Ryan

Zombo, Plaintiff's first-line manager, made the decision to select Plaintiff for inclusion in a Resource Action.  Mr. Zombo's decision was reviewed and concurred with by David Kevnick, who is Mr. Zombo's manager.  Scott Dial provided input and concurred with Mr. Zombo's decision.

3.     State the exact reason why the final decisionmaker terminated Plaintiff's employment, describe chronologically each step of the decisionmaking process, and identify and explain the decisionmaker's reasoning behind all ratings, rankings or reviews of Plaintiff, and of any other IBM employee against whom Plaintiff was compared in reaching the decision to terminate Plaintiff's employment.

With respect to comparators, your response should address persons considered for termination and selected for termination, persons considered for termination and not selected for termination, and persons not considered or exempt from consideration for termination.

If the final decisionmaker received recommendations or input from another person on who to select for termination and who not to select, identify such other person, state their recommendations or input, state whether the final decisionmaker followed them/it, and if not, why not.

**ANSWER:**  IBM objects to this Interrogatory as being characterized by Plaintiff as one discrete interrogatory when, in fact, it is actually *at least* six interrogatories disguised as one.  IBM responds to six discrete interrogatories within this one answer and counts that toward the 25 interrogatories to which Plaintiff is limited by Rule 33(b).  This objection (hereinafter referred to by IBM as its "Rule 33(a)/26(b) objection") is noted because Federal Rule of Civil Procedure 33(a) expressly limits a party to "no more than 25 written interrogatories, including all discrete

subparts." *See* Fed.R.Civ.P. 33(a).  Further, Rule 26(b) requires discovery to be "proportional

to the needs of the case," and it is IBM's position that *any* interrogatory-based discovery

exceeding that permitted by the express limitation in Rule 33(a) is disproportional to the needs

of this single-plaintiff employment discrimination case.  Subject to other objections noted

below, IBM responds consistent with the Rule 33, including subpart (a) of Rule 33, and Rule

26(b).  IBM further objects to this Interrogatory as being vague and ambiguous because it is

unclear what is meant by the terms/phrases "describe," "decisionmaking process," "reasoning

behind," "ratings," "rankings," and "reviews."  There is more than one potential meaning of

those terms/phrases, at least in the context of this case, and Defendant responds consistent with

its own understanding of those undefined terms/phrases.  IBM further objects because this

Interrogatory seeks confidential personnel information regarding nonparty current and former

employees of IBM, which IBM protects as a matter of course.  In addition, IBM objects to this

Interrogatory because it assumes there was one "exact reason" for Plaintiff's selection in the

Resource Action.  IBM further objects to this Interrogatory to the extent that it seeks

information not relevant to either party's claims or defenses, in the context of the disparate

treatment claim currently at issue.  Subject to, and without waiving these objections, IBM

responds as follows:

With respect to the First Discrete Subpart ("State the exact reason why the final

decisionmaker terminated Plaintiff's employment") of this Interrogatory No. 3:  Mr. Zombo

selected Mr. Tsounos for layoff because, upon being directed to reduce headcount on this team,

Mr. Zombo analyzed (with input from fellow first-level manager Scott Dial) the skills of four

Band 9 employees in the same job group, as well as the needs of the team going forward.  Upon

completing that analysis, Mr. Zombo determined that Mr. Tsounos was ranked among the

bottom two, among those four employees, which resulted in Mr. Tsounos being designated to be laid off as part of a Resource Action.

With respect to the Second Discrete Subpart of this Interrogatory ("describe chronologically each step of the decisionmaking process") and subject to the vagueness objection set forth above:  First, see IBM's response to the First Discrete Subpart.  Second, on or about April 5, 2016, IBM first-line manager Scott Dial, on a document titled B9 Presales Staff Reduction Worksheet, ranked the four employees based upon his perception of their capabilities related to four skills (sales, technical, communication and leadership) and forwarded the spreadsheet to Messrs. Kevnick and Zombo.  Next, on or about April 7, 2016 and continuing into the next day, Mr. Zombo reviewed and made edits to the spreadsheet, reflecting his perception of the capabilities of the four employees related to four skills.  Mr. Zombo also corrected some factual information about past performance  reviews.  On or about April 8, 2016, Mr. Zombo forwarded the spreadsheet to Mr. Kevnick.  Thereafter, Mr. Kevnick reviewed and approved the rankings, and on or about April 11, 2016, forwarded the B9 Presales Staff Reduction Worksheet to his then-manager and a human resources partner, Becky Torres. Ms. Torres reviewed the selections on April 18, 2016.   By way of further response, IBM directs (pursuant to Rule 33(d)) Plaintiff Tsounos to the business records that it produced contemporaneous herewith, including Mr. Dial's B9 Presales Staff Reduction Worksheet, and Mr. Zombo's revised B9 Presales Staff Reduction Worksheet.

With respect to the Third Discrete Subpart of this Interrogatory ("identify and explain the decisionmaker's reasoning behind all **ratings**, rankings or reviews of Plaintiff, and of any other IBM employee against whom Plaintiff was compared in reaching the decision to terminate Plaintiff's employment") and subject to the vagueness objection set forth above:  First, IBM

assumes for purposes of this response that the undefined term "ratings" refers to the ratings assigned to Mr. Tsounos during the Resource Action selection process.  The decisionmaker, Mr. Zombo, rated Mr. Tsou REDACTED nmunication based on feedback he received indicating that Mr. Tsounos appeared REDACTED

.  Mr. Zombo rated Mr. Tsouno REDACTED les, which reflected Mr. Zombo's perception that Mr. Tsounos' sales numbers did not accurately depict his own efforts to generate revenue and client development, but rather resulted from being teamed with other sellers whose work and efforts drove sales and revenue.  Mr. Zombo rated Mr. Tsouno REDACTED s technical knowledge because he was a core-database specialist, as opposed to possessing specific technical expertise tied to the group's priorities moving forward, such as open source analytics.  Mr. Zombo rated Mr. Tsouno REDACTED leadership, which reflected Mr. Zombo's perception that Mr. Tsounos required relatively significant oversight and would frequently look for direction from peers and managers regarding next steps on client issues.  Mr. Dial concurred with the foregoing ratings and Mr. Kevnick approved.  By way of further response, IBM directs (pursuant to Rule 33(d)) Plaintiff Tsounos to the business records that it produced contemporaneous herewith, specifically Mr. Dial's B9 Presales Staff Reduction Worksheet, and Mr. Zombo's revised B9 Presales Staff Reduction Worksheet.

Continuing with the Third Discrete Subpart of this Interrogatory ("identify and explain the decisionmaker's reasoning behind all ratings, **rankings** or reviews of Plaintiff, and of any other IBM employee against whom Plaintiff was compared in reaching the decision to terminate Plaintiff's employment") and subject to the vagueness objection set forth above:  First, see IBM's initial response to the Third Discrete Subpart.  Second, IBM assumes for purposes of this

-8-

response that the undefined term "rankings" refers to the ranking of Mr. Tsounos and others in his group during the Resource Action selection process.  The reasoning behind the ranking by Mr. Zombo, with which Mr. Dial concurred and Mr. Kevnick approved, was that other employees were perceived to be more proficient with respect to four skills (sales, technical, communication, and leadership).

Continuing with the Third Discrete Subpart of this Interrogatory ("identify and explain the decisionmaker's reasoning behind all ratings, rankings or **reviews** of Plaintiff, and of any other IBM employee against whom Plaintiff was compared in reaching the decision to terminate Plaintiff's employment") and subject to the vagueness objection set forth above:  First, IBM assumes for purposes of this response that the undefined term "reviews" refers to the Personal Business Commitments ("PBC") reviews of Mr. Tsounos and other members of his group during a temporally relevant time period.  As Plaintiff Tsounos did not define any time period, IBM limits its response to a period temporally relevant within the context of this response and directs (pursuant to Rule 33(d)) Plaintiff Tsounos to the business records that it produced contemporaneous herewith, specifically PBC ratings from 2013, 2014, and 2015, and the PBC ratings of the three peers in his job group from 2013, 2014, and 2015, to the extent they exist.

With respect to the Fourth Discrete Subpart of this Interrogatory ("If the final decisionmaker received recommendations or input from another person on who to select for termination and who not to select, identify such other person, state their recommendations or input, state whether the final decisionmaker followed them/it, and if not, why not."):  IBM identifies fellow first-line manager Scott Dial and second-line manager David Kevnick.  As for distinctions among views, Mr. Zombo rated a peer of Mr. Tsounos as having a "high" level of communication skill, in contrast to Mr. Dial, who rated that peer as having a "medium" skill

level.  Also, Mr. Zombo corrected two inaccuracies that appeared in Mr. Dial's spreadsheet, including noting that Mr. Tsounos was REDACTED ost recent PBC review (as opposed to simply 2).

**Please note that, through the foregoing response to Interrogatory No. 3, IBM has now substantively responded to six (6) interrogatories.**

4.      Identify all written and oral reviews, evaluations, rankings, ratings or comments upon Plaintiff's performance, whether as part of an annual performance review or not, whether positive or negative, made by any supervisor, manager, executive, co-worker or client of IBM from October 1, 2014 forward.  Include in such description:

        a.      The date of the reviews, evaluations, rankings, ratings or comments;

        b.      Whether it was communicated to Plaintiff, and the date of the communication;

        c.      The person who made the reviews, evaluations, rankings, ratings or comments;

        d.      The identity of any person who considered, approved, reviewed, or acted upon the reviews, evaluations, rankings, ratings or comments in any respect, and the details of the action taken;

        e.      The substance of the reviews, evaluations, rankings, ratings or comments; and,

        f.      An identification of the reviews, evaluations, rankings, ratings or comments if in writing or if made orally and later reduced to writing or written memorandum.

**ANSWER:**  IBM objects to this Interrogatory as being overly broad, unduly burdensome, and disproportional to the needs of the case because it demands identification of "**all** written and oral reviews …. ," conceivably requiring IBM to search each and every file in its possession, paper and/or electronic, and to question each and every individual who may have interacted

with Plaintiff Tsounos, to identify potentially responsive information.  IBM also objects to this request as being overly broad in temporal scope and disproportional to the needs of the case, considering the factors set forth in current Rule 26(b)(1), because it is not limited to an appropriate time period.  In addition, IBM objects to this Interrogatory because it requests information that is outside of IBM's custody or control insofar as it requests oral reviews and reviews from clients.  IBM further objects to this Interrogatory as being vague and ambiguous because it is unclear what is meant by the terms/phrases "evaluations," "ratings," "rankings," and "reviews."  There is more than one potential meaning of those terms/phrases, at least in the context of this case, and Defendant responds consistent with its own understanding of those undefined terms/phrases.  Without waiving the foregoing objection[s] and the General Objections set forth above, IBM's directs Plaintiff to its response to Interrogatory No. 3.  It further responds that its records reflect that:

1. Plaintiff Tsounos had an annual PBC review with Sandra Kern on January 24, 2014 for calendar year 2013 and was rated   ;

2. Plaintiff Tsounos had an annual PBC review with Sandra Kern on January 23, 2015 for calendar year 2014 and was rated   ;

3. Plaintiff Tsounos had an interim PBC review on July 27, 2015; and

4. Plaintiff Tsounos had an annual PBC review with Ryan Zombo on February 19, 2016 for calendar year 2015 and was rated    .

By way of further response, IBM directs (pursuant to Rule 33(d)) Plaintiff Tsounos to the business records that it produced contemporaneous herewith, specifically PBC ratings from 2013, 2014, and 2015, and the B9 Presales Staff Reduction Worksheets.

**Please note that, through the foregoing response to Interrogatory No. 4, IBM has substantively responded to seven (7) interrogatories.**


5.      Identify and state with particularity all actions IBM has taken to recruit, attract, engage and/or retain Millennials (as the term "Millennials" is defined above), since January 1, 2012, and include in your response an identification of all meetings, communications, documents and ESI that reference, reflect or relate to IBM's plans, strategies, actions or efforts to recruit, attract, engage and/or retain Millennials.

**ANSWER:**  IBM asserts its threshold objection regarding the breadth and scope of appropriate discovery in this single-plaintiff disparate treatment discrimination case (hereinafter "Threshold Objection"), of which the Plaintiff is aware.  IBM also objects to this Interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case, as the requested information is wholly unrelated to Plaintiff's particular termination and/or job applications in this single-plaintiff discrimination case.  IBM also objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not reasonably limited, temporally or organizationally.  IBM further objects to this Interrogatory as seeking to impose burdens greater than those required by the Federal Rules of Civil Procedure, which limits Plaintiff to 25 interrogatories.  IBM has responded to 25 interrogatories herein.

**Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to seven (7) interrogatories through this Interrogatory No. 5.**

6.      Your Senior Brand Strategist Bill Grady has written:

> At IBM, Millennials are driving much of our transformation -
> from how we recruit and train employees, to how we engage with
> our clients.  ***
>
> IBM has changed the way we design our products, which are now
> tailored to the digital expectations of Millennial users.  Millennial
> designers are embedded in product development teams to help
> them understand the specific needs of Millennial users.  For
> example, last year IBM Bluemix, our cloud developer platform,
> was the first result of this new approach.  IBM Verse, our new
> social email tool, was designed by Millennials, with Millennials
> in mind.  The same is true for the rest of IBM's software portfolio
> – data analytics, security, mobile – all designed with strong
> Millennial influence.
>
> Our study leaves no doubt that Millennials are fundamentally
> reshaping the way people work, and that organizations must
> transform themselves to remain relevant.  While they might be
> more inclined to send a text than make a phone call, the fact is,
> Millennials are essential to our workforce.  And the opportunity is
> enormous.[1]

With respect to Mr. Grady's assertions, describe in detail the following:

   a.      How Millennials are driving IBM's transformation, specifically
           identifying each way Millennials have changed or transformed how IBM
           recruits and trains employees, and each way Millennials have changed or
           transformed how IBM engages with its clients;

   b.      All product design changes that IBM has made to tailor IBM products to
           the digital expectations of Millennial users;

   c.      State whether IBM has assigned, embedded or otherwise staffed any
           teams with Millennials, identify all such teams including specifically
           sales teams, pre-sales teams, and technical specialist teams, and state
           IBM's reasons for same;

   d.      State whether it is true that "a company's millennial employees are its
           most valuable and accessible asset when it comes to successfully

---

[1]      *When the Workplace Gets Tough, Millennials Get Working (No, Seriously)*, February 25,
2015, accessed April 20, 2017, available at  https://blog.ibm.jobs/2015/02/25/when-the-
workplace-gets-tough-millennials-get-working-no-seriously/.

capturing the hearts, minds … and wallets, of the millennial generation,"[2] and state the factual bases for your answer; and,

e.      State whether it is true that "[s]enior leaders at IBM uncovered this secret a year and a half ago when they realized that no one knows what the millennial generation desires or responds to more than actual millennials[,]"[3] and state the factual bases of your answer.

**ANSWER:**  IBM again raises its Threshold Objection.  IBM also again raises its Rule 33(a)/26(b) objection, as this Interrogatory actually is five interrogatories disguised as one. IBM further objects to this Interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case, as the requested information is wholly unrelated to Plaintiff's particular termination and/or job applications in this single-plaintiff discrimination case.  In addition, IBM objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome, and not reasonably limited, temporally or organizationally.  With respect to the next discrete subpart of this Interrogatory ("State whether IBM has assigned, embedded or otherwise staffed any teams with Millennials, identify all such teams including specifically sales teams, pre-sales teams, and technical specialist teams, and state IBM's reasons for same"), IBM responds (with respect to the team on which Plaintiff Tsounos worked during 2016) that it was not purposely assigned, embedded, or otherwise staffed with what he defines (Interrogatory Definition No. 11) to be Millennials (e.g., born after 1980).

**Please note, as IBM substantively responded to one discrete subpart of this Interrogatory No. 6, it has responded to eight (8) interrogatories through this Interrogatory No. 6.**

---

[2]      *How IBM Is Cracking the Millennial Code, July 12, 2016*, accessed April 20, 2017, available at https://blog.ibm.jobs/2016/07/12/how-ibm-is-cracking-the-millennial-code/.

[3]      *Id.*

7.      Identify and describe with particularity your campus/college/university recruiting programs in the United States, and your internship and leadership/development programs in the United States (*e.g.*, Extreme Blue and Consulting by Degrees), providing the following information at a minimum:

    a.      A descriptive summary of your campus/college/university recruiting programs, internships and leadership/development programs, identifying their respective purpose(s),

    b.      The average age of persons recruited through your college/university/campus recruiting programs in 2015 and 2016;

    c.      The average age of participants in Extreme Blue in 2015 and 2016;

    d.      The average age of participants in Consulting by Degrees in 2015 and 2016;

    e.      The number of graduates recruited/hired through your college/university/campus recruiting programs in 2012, 2013, 2014, 2015 and 2016;

    f.      The required criteria for eligibility for hiring through your college/university/campus recruitment programs, including graduation dates in a specific year and whether candidates must be currently or recently affiliated with a college/university/campus;

    g.      The required criteria for eligibility to participate in Extreme Blue or Consulting by Degrees, including whether Baby Boomers are permitted to participate; and,

    h.      An identification of all documents and ESI referencing or relating to your college/university/campus recruiting programs, internship and leadership/development programs, including all documents and ESI that advertise/promote/market same, and that reflect any demographic, participation or hiring statistics for same.

**ANSWER**:  IBM again raises its Threshold Objection.  IBM also raises its Rule 33(a)/26(b)

objection, as this Interrogatory actually is eight interrogatories disguised as one.  IBM also

objects to this Interrogatory on the grounds that it seeks information that is not relevant to any

party's claim or defense, and is not proportional to the needs of the case, as the requested information is wholly unrelated to Plaintiff's particular termination and/or job applications in this single-plaintiff discrimination case.  In addition, IBM objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome, and not reasonably limited, temporally or organizationally.  IBM also objects to this Interrogatory as seeking to impose burdens greater than those required by the Federal Rules of Civil Procedure, which limits Plaintiff to 25 interrogatories.  IBM has responded to 25 interrogatories herein.

**Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to eight (8) interrogatories through Interrogatory No. 7.**


8.     From January 1, 2012 to the present, identify all research, studies, investigations, examinations, analyses, surveys, audits or reviews IBM or its agent has conducted or adopted that reference, discuss or relate to age, age demographics, applicant or employee generations, Millennials, Generation X, Baby Boomers, the actual or perceived traits of any age generation, or the age demographics of IBM's actual or desired workforce.

**ANSWER:**  IBM again raises its Threshold Objection.  IBM also objects to this Interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case, as the requested information is wholly unrelated to Plaintiff's particular termination and/or job applications in this single plaintiff discrimination case.  IBM also objects to the terms "investigations," "examinations," "surveys," and "audits" as vague, ambiguous, and subject to varying interpretations.  In addition, IBM objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not reasonably limited in time given the issues in this case.   IBM also objects to this Interrogatory as seeking

to impose burdens greater than those required by the Federal Rules of Civil Procedure, which limits Plaintiff to 25 interrogatories.  IBM has responded to 25 interrogatories herein.

**Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to eight (8) interrogatories through this Interrogatory No. 8.**


9.      For the period from January 1, 2012 to the present, describe with particularity all of IBM's efforts to internally and externally brand to Millennials or to the Millennial Generation, whether as prospective employees, current employees, prospective IBM customers, current IBM customers, or as members of the public.

**ANSWER:**  IBM again raises its Threshold Objection.  IBM also objects to this Interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case, as the requested information is wholly unrelated to Plaintiff's particular termination and/or job applications in this single-plaintiff discrimination case.  In addition, IBM objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not reasonably limited in time given the issues in this case.  IBM also objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not reasonably limited in time given the issues in this case.  IBM further objects to this Interrogatory as seeking to impose burdens greater than those required by the Federal Rules of Civil Procedure, which limits Plaintiff to 25 interrogatories.  IBM has responded to 25 interrogatories herein.

**Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to eight (8) interrogatories through Interrogatory No. 9.**

10.     For each RIF taking place in the United States at any time from January 1, 2014 to the present, including the RIF that separated Plaintiff from employment, state, describe and identify:

a.      The date and name of the RIF, the Decisional Unit, the locations affected by the RIF, and all circumstances which led IBM to implement the RIF;

b.      Whether a written RIF plan was developed, and if so, by whom, describe the substance of the plan, identify all persons who reviewed the plan prior to implementation, all persons who implemented the plan, all meetings held about the RIF plan, and all documents or ESI that reference or relate to the RIF plan;

c.      All criteria for selecting employees to be terminated, including in your response a precise description of how the selection criteria were decided upon, a precise statement of each of the facts upon which IBM based its termination selections describing how the criteria were applied to each employee considered for termination, the identity of each person who had input to the decision to terminate these employees and/or who had input into developing, drafting or creating the selection criteria, the identity of each person who made the final decisions related to termination of these employees and, if the selection criteria differed from those IBM used in prior or subsequent RIFs, state the differences and explain why they differed;

d.      Whether the RIF was related to or a continuation of one or more prior RIFs, contemporaneous RIFs or successive RIFs, including whether said RIFs were part of an overall "workforce transformation" or "workforce rebalancing";[4]

e.      The stated and/or actual objectives of the RIFs, including specifically how the RIFs related to IBM's "efforts to reinvent [its] core hardware, software and services franchises, while investing to create new ones - in cloud, data, cognitive, security and the other businesses that comprise

---

[4]     *See, e.g.*, 2016 IBM Annual Report, p. 29 ("Base expense also includes charges in 2016 for actions taken to accelerate the transformation of the company's workforce and shift its skill base, as well as increased investments in the strategic areas of cognitive, security and cloud. This included a higher level of workforce rebalancing charges ($451 million) year to year and real estate capacity charges ($291 million) related to the workforce transformation. The company continued to invest at a high level in 2016 and remixed skills in support of the strategic imperatives.") accessed April 13, 2017 at https://www.ibm.com/annualreport/.

[IBM's] strategic imperatives;"[5]

    f.     Whether the RIF was intended to facilitate the hiring of Millennials, make room for Millennials to join IBM, or otherwise create employment opportunities for Millennials at IBM; and,

    g.     Any other intended connection between the RIF, Millennials and IBM's "workforce transformation" or "workforce rebalancing."

**ANSWER:**  IBM again raises its Threshold Objection.  IBM also again raises its Rule

33(a)/26(b) objection, as this Interrogatory actually is at least seven interrogatories disguised as

one, and IBM actually responds to four discrete interrogatories here.  IBM further objects to this

Interrogatory on the grounds that it seeks information that is not relevant to any party's claim or

defense, and is not proportional to the needs of the case, as RIFs other than the RIF affecting

Plaintiff are wholly unrelated to Plaintiff's particular termination in this single-plaintiff,

disparate treatment discrimination case.  In addition, IBM objects to this Interrogatory on the

grounds that it is overbroad, unduly burdensome, and not reasonably limited in time given the

issues in this case.  Subject to, and without waiving these objections, IBM responds as follows:

    With respect to the First Discrete Subpart ("The date and name of the RIF, the

Decisional Unit, the locations affected by the RIF, and all circumstances which led IBM to

implement the RIF") to which IBM responds:  The Resource Action occurred in the second

quarter of 2016 and was named ANGG.  It impacted the sales organization of the Analytics

group.  The impacted locations were in North America.  The circumstances that led to the

Resource Action included    REDACTED   .

    With respect to the Second Discrete Subpart ("All criteria for selecting employees to be

terminated") to which IBM responds:  Plaintiff Tsounos and the three individuals against whom

he was compared were evaluated during the Resource Action regarding four skills, those being

---

[5]    *Id.* at p. 19.

sales, technical, communication and leadership.  The decisionmaker, Mr. Zombo, rated Mr.

Tsounos "low" on communication.  Mr. Zombo rated Mr. Tsou⬛REDACTED⬛ sales.  Mr.

Zombo rated Mr. Tsouno⬛REDACTED⬛s technical knowledge.  Mr. Zombo rated Mr.

Tsoun⬛REDACTED⬛eadership.  The other three employees were assessed regarding the same

skills.  By way of further response, IBM directs (pursuant to Rule 33(d)) Plaintiff Tsounos to

the business records that it produced contemporaneous herewith, specifically Mr. Dial's B9

Presales Staff Reduction Worksheet, and Mr. Zombo's revised B9 Presales Staff Reduction

Worksheet.

       With respect to the Third Discrete Subpart ("The stated and/or actual objectives of the

RIF") to which IBM responds:  IBM's objective was to          REDACTED


       .

       With respect to the Fourth Discrete Subpart ("Whether the RIF was intended to facilitate

the hiring of Millennials, make room for Millennials to join IBM, or otherwise create

employment opportunities for Millennials at IBM" and was there "[a]ny other intended

connection between the RIF, Millennials and IBM's 'workforce transformation' or 'workforce

rebalancing.'") to which IBM responds:  No.

       **Please note that IBM has substantively responded to twelve (12) interrogatories**

**through the foregoing response to Interrogatory No. 10.**

11.     Describe the capabilities of CERIS, identify all reports that CERIS can generate which contain or reflect information about applicant or employee demographics, including age,[6] and identify all CERIS data fields.  Please provide the same information for IBM's RMA database, and describe the uses of IBM's RMA database.  If IBM uses any other database to store, track or analyze information about applicants or employees (e.g., COGNOS), please identify such other databases and provide the same information for such other databases.

**ANSWER:**  IBM again raises its Threshold Objection.  IBM also objects to this Interrogatory on the grounds that it is not relevant to any party's claim or defense, nor proportional to the needs of the case, as it seeks information that is wholly unrelated to Plaintiff's particular layoff and/or job applications in this single plaintiff discrimination case.  IBM also objects to this Interrogatory as seeking to impose burdens greater than those required by the Federal Rules of

---

[6]     For example, IBM's COGNOS database will produce Workforce Performance reports in the analysis areas of Demographic Hiring, Demographic Performance, Demographic Progression and Demographic Turnover, each with specific hierarchies, measures, filters and reports (click on the thumbnail below for COGNOS's specific capabilities).  Plaintiff wishes to know the capabilities of CERIS along the same lines as the capabilities of COGNOS are explained in the COGNOS User Manual.



Civil Procedure, which limits Plaintiff to 25 interrogatories.  IBM has responded to 25

interrogatories herein.

**Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to twelve (12) interrogatories through Interrogatory No. 11.**


12.     Since January 1, 2013, has IBM run or posted any job ads for employment in the

United States that require applicants to still be in college or graduate school, or to have

graduated in or after a certain year, or to have a maximum number of years of work experience?

If so, kindly identify all such job ads.   If you answer in the negative, identify every step you

took to verify the accuracy of your answer.

**ANSWER:**  IBM again raises its Threshold Objection.  IBM also objects to this Interrogatory

on the grounds that it seeks information that is not relevant to any party's claim or defense, and

is not proportional to the needs of the case, as the requested information is wholly unrelated to

Plaintiff's particular job applications in this single-plaintiff discrimination case.  IBM also

objects to this Interrogatory as it is not reasonably limited in time, given that Plaintiff's attempts

to find new employment at IBM after his layoff notification took place in 2016.  IBM also

objects to this Interrogatory as seeking to impose burdens greater than those required by the

Federal Rules of Civil Procedure, which limits Plaintiff to 25 interrogatories.  IBM has

responded to 25 interrogatories herein.

**Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to twelve (12) interrogatories through Interrogatory No. 12.**

13.     Identify all statistical tests, analyses or studies you conducted in connection with any force reduction taking place in the United States at any time from January 1, 2014 to the present, describe your methodology, state the purposes and results of said tests, analyses or studies, identify the software you used, the names and job titles of the persons conducting the tests, analyses or studies, the persons to whom the results were reported, and all documents, ESI and communications that reflect, reference or relate to the conducting of said tests, analyses or studies, or the purposes or results of same.

**ANSWER:**  IBM again raises its Threshold Objection.  IBM also objects to this Interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case, as the requested information is wholly unrelated to Plaintiff's particular job applications in this single-plaintiff discrimination case.  IBM also objects to this Interrogatory insofar as it seeks information and/or documents that are protected from disclosure by the attorney-client privilege and/or the work product doctrine.  Furthermore, IBM objects to the terms "analyses" and "studies" as vague, ambiguous, and subject to varying interpretations.  IBM also objects to this Interrogatory as seeking to impose burdens greater than those required by the Federal Rules of Civil Procedure, which limits Plaintiff to 25 interrogatories.  IBM has responded to 25 interrogatories herein.

**Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to twelve (12) interrogatories through Interrogatory No. 13.**

14.     For each RIF taking place in the United States from January 1, 2014 to the present, identify by name, job position/title, college graduation year and age:

     a.    All employees selected for termination who applied for other jobs with IBM within the 90-day working notice period; and,

      b.      All employees selected for termination who applied for other jobs with IBM within the 90-day working notice period who were hired by IBM.

**ANSWER:** IBM again raises its Threshold Objection. IBM also objects to this Interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case, as the requested information is wholly unrelated to Plaintiff's particular layoff and/or job applications in this single-plaintiff discrimination case. IBM further objects to this Interrogatory because it seeks confidential personnel information regarding nonparty current and former employees of IBM, which IBM protects as a matter of course. IBM also objects to this Interrogatory as seeking to impose burdens greater than those required by the Federal Rules of Civil Procedure, which limits Plaintiff to 25 interrogatories. IBM has responded to 25 interrogatories herein.

      **Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to twelve (12) interrogatories through Interrogatory No. 14.**

      15.      Identify all persons currently or formerly employed by IBM who have made complaints and/or allegations regarding discrimination based on age at any time since January 1, 2013, including, but not limited to, internal complaints, charges filed with the EEOC or a state FEPA, demands for arbitration and/or complaints filed in federal or state courts

**ANSWER:** IBM objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and not reasonably limited in time, given the issues in this case, as it requests information about claims involving all of IBM's employees, in all of its departments, dating back more than three years. IBM also objects to this Interrogatory on the grounds that it seeks information that is not relevant to any party's claim or defense, and is not proportional to the needs of the case, as the requested information is wholly unrelated to Plaintiff's particular

termination and/or job applications in this single-plaintiff discrimination case.  Subject to, and without waiving these objects, IBM states that, to the best of its knowledge based on a reasonable investigation to date, no employees in the sales organization of the Analytics group reporting to first-line manager Ryan Zombo have made complaints and/or allegations regarding age discrimination since January 1, 2013:

**Please note that IBM has substantively responded to thirteen (13) interrogatories through Interrogatory No. 15.**


16.     Please identify all employees you contend are similarly-situated to Plaintiff for purposes of analyzing Plaintiff's termination claims <u>and</u> his failure to hire claims, and IBM's defenses to those claims, and precisely state your reasons for same.  Include in your answer all factors you believe are relevant in assessing whether two or more employees are similarly-situated, such as job band, job ID, job title, supervisor, job category and/or secondary job category, job family, job country, experience level, geographic region, business unit or sub-unit, Group ID, Blue Matching results, Gearbox matches and/or JRSS, and your reasons for believing said factor(s) is/are relevant.  Also include in your answer all factors you contend render two or more employees not similarly-situated for purposes of comparison with respect to a disparate treatment claim under the ADEA.

**<u>ANSWER</u>:**  IBM again raises its Rule 33(a)/26(b) objection, as this Interrogatory actually is at least two interrogatories disguised as one, and IBM actually responds to two discrete interrogatories here.  IBM also objects to this Interrogatory to the extent it requests a legal conclusion, or seeks the mental impressions of IBM's counsel.

Subject to, and without waiving these objections, IBM responds with respect to the First Discrete Subpart that the following individuals are similarly situated to Plaintiff for purposes of analyzing Plaintiff's layoff-related discrimination claim.  Like Plaintiff, they were employed as Band 9 Presales Technical Specialists in the sales organization for the Analytics group and reported to Mr. Zombo at the time of the Resource Action affecting Plaintiff:

- Alexander Hay
- Veera Chinnam
- Michael Edwartowski

IBM responds with respect to the Second Discrete Subpart that the following individuals are similarly situated to Plaintiff for purposes of analyzing Plaintiff's failure-to-hire claim. They were hired into positions to which Plaintiff also applied following his layoff notification.

- Jesus
- Gerry
- Meridee
- Jim
- Ryan

REDACTED
(Last names, due to their DOBs being reflected below)

**Please note that IBM has substantively responded to fifteen (15) interrogatories through Interrogatory No. 16.**

17.    Identify:

      a.    Plaintiff's base salary as of March 1, 2016;

      b.    All merit pay (e.g., bonuses, cash awards, commissions, prizes) Plaintiff earned in 2015 and 2016 respectively; and,

      c.    Every fringe benefit Plaintiff had as an IBM employee as of March 1, 2016, including the monetary value thereof.

__ANSWER__:  IBM objects to this Interrogatory as seeking information already within the possession of Plaintiff.  IBM also objects to this Interrogatory as seeking to impose burdens

greater than those required by the Federal Rules of Civil Procedure, which limits Plaintiff to 25 interrogatories.  IBM has responded to 25 interrogatories herein.  Without waiving the foregoing objection or IBM's General Objections, IBM states that its records reflect that, as of March 1, 2016, Plaintiff's monthly base salary was <span>REDACTED</span> which records reflect represented <span>REDACTED</span> ercent of his base salary, with the remaining representing incentive compensation.

**Please note that IBM has substantively responded to sixteen (16) interrogatories through Interrogatory No. 17.**

18.     Explain how IBM calculated sales commissions / incentive pay for Plaintiff in 2015 (and any other part of Plaintiff's non-salary 2015 compensation that was based in whole or in part on Plaintiff's performance), identifying all sales on which Plaintiff earned commissions, the commissions Plaintiff earned, the calculation used for said commissions, and all documents/ESI that reflect or relate to Plaintiff's sales commissions and comparative sales performance against other employees from October 1, 2014 through the date Plaintiff was selected for termination.

**ANSWER:**  IBM again raises its Rule 33(a)/26(b) objection, as this Interrogatory actually is two interrogatories disguised as one, and IBM substantively responds to one.  IBM further objects to this Interrogatory to the extent that it suggests that Plaintiff was a commission-based technical sales specialist; he was not (at least to the extent that it is being suggested that he was paid per-sale, percentage-based commissions).  Without waiving the foregoing objection or IBM's General Objections, IBM responds that Plaintiff's compensation in 2015 and 2016 was <span>REDACTED</span> percent base salary and <span>REDACTED</span> centive compensation.  By way of further response,

IBM directs (pursuant to Rule 33(d)) Plaintiff Tsounos to the business records that it produced

contemporaneous herewith, specifically incentive compensation statements.

**Please note that IBM has substantively responded to seventeen (17) interrogatories**

**through Interrogatory No. 18.**

        19.      Identify the IBM executive most knowledgeable about:

              a.      Ginni Rometty's speech delivered on April 26, 2016, available at https://www.ibm.com/ibm/ginni/04_26_2016.html, (wherein she said, *inter alia*, "[I]n 2014 [IBM] pivoted and restructured." It "divest[ed] commoditizing businesses, restructur[ed] others and accelerat[ed] [IBM's] strategic imperatives - Data, Analytics, Cloud, Mobile, Social and Security….");

              b.      IBM's brand; and,

              c.      IBM's "workforce transformations" or "workforce rebalancing" since and including 2014.

If your Answer(s) is/are anyone other than Chief Executive Officer Ginni Rometty, state

every reason why you believe the person(s) you identify has/have more knowledge than Ms.

Rometty.

**ANSWER:** IBM again raises its Threshold Objection. IBM also objects to this Interrogatory

on the grounds that it seeks information that is not relevant to any party's claim or defense, and

is not proportional to the needs of the case, as the requested information is wholly unrelated to

Plaintiff's particular termination and/or job applications in this single plaintiff discrimination

case. IBM also objects to this Interrogatory as seeking to impose burdens greater than those

required by the Federal Rules of Civil Procedure, which limits Plaintiff to 25 interrogatories.

IBM has responded to 25 interrogatories herein.

Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to seventeen (17) interrogatories through Interrogatory No. 19.


20.      Identify all commendations, honors, praises, recognitions, cash or non-cash awards, prizes, gifts, vacations or other distinctions Plaintiff earned or was awarded from October 1, 2014 through the date of his selection for termination, and provide the same information for all other members of the Analytics sales team reporting to Ryan Zombo during the same time period of time.

**ANSWER:**  IBM objects to this Interrogatory as being overly broad, unduly burdensome and disproportionate to the needs of the case because it demands identification of "all commendations, honors, praises …. ," conceivably requiring IBM to search each and every file in its possession, paper and/or electronic, and to question each and every individual who may have interacted with Plaintiff Tsounos, to identify potentially responsive information.  IBM also objects to this request as being overly broad in temporal scope and disproportionate to the needs of the case, considering the factors set forth in current Rule 26(b)(1), because it is not limited to an appropriate time period.  IBM further objects because this Interrogatory seeks confidential personnel information regarding nonparty employees of IBM, which IBM protects as a matter of course.  Subject to, and without waiving the foregoing objections or IBM's General Objections, and after reasonable investigation, IBM responds that its records reflect that Tsounos received a Lab Services Award on March 12, 2015, and Hundred Percent Club recognition on April 6, 2016.  By way of further response, IBM directs (pursuant to Rule 33(d)) Plaintiff Tsounos to the business records that it produced contemporaneous herewith, specifically his personnel file, which contains some information about Plaintiff's awards

history, and to the personnel files of his comparators, which contain information about their

awards history, if any.

**Please note that IBM has substantively responded to eighteen (18) interrogatories**

**through Interrogatory No. 20.**

21.     For all Resource Actions occurring from October 6, 2015 to the present, identify

by name, address, phone number, personal email address if known, age and college graduation

year:

> a.     All persons over the age of 40 selected for termination with a 2+ or
> higher PBC rating in the year preceding their selection for termination
> who executed a Separation and Release Agreement; and,
>
> b.     All persons over the age of 40 selected for termination with a 2+ or
> higher PBC rating in the year preceding their selection for termination
> who did not execute a Separation and Release Agreement.

**ANSWER:** IBM again raises its Threshold Objection.  IBM also objects to this Interrogatory

on the grounds that it seeks information that is not relevant to any party's claim or defense, and

is not proportional to the needs of the case, as the requested information is wholly unrelated to

Plaintiff's particular termination and/or job applications in this single plaintiff discrimination

case.  IBM further objects to this Interrogatory because it seeks confidential personnel

information regarding nonparty current and former employees of IBM, which IBM protects as a

matter of course..  IBM also objects to this request as being overly broad in organizational scope

and disproportional to the needs of the case, considering the factors set forth in current Rule

26(b)(1), because it is not limited to the group that employed Plaintiff.  IBM further objects to

this request as being unduly burdensome, as it does not track the information sought as a matter

of course.  IBM also objects to this Interrogatory as seeking to impose burdens greater than

those required by the Federal Rules of Civil Procedure, which limits Plaintiff to 25 interrogatories.  IBM has responded to 25 interrogatories herein.

**Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to eighteen (18) interrogatories through Interrogatory No. 22.**


22.     State the name and address of each witness you expect to call to testify as an expert at trial, and as to each such person, state the field of his/her expertise, the subject matter on which such person is expected to testify, the facts and opinions to which such person is expected to testify, and the bases of each opinion.  Please further provide a detailed list of all publications each such person has authored, or co-authored, and the name of the publication in which the article has appeared, or the name of the publisher who has published the article, and enough information about the publication to enable the Plaintiff to obtain it.

**ANSWER:**  IBM again raises its Rule 33(a)/26(b) objection, as this Interrogatory actually is at least two interrogatories disguised as one.  IBM objects to this Interrogatory as being premature, as it has not identified any expert witnesses in connection with this litigation at this time.

**Please note that, as IBM did not substantively respond to this Interrogatory, it has responded to eighteen (18) interrogatories through Interrogatory No. 22.**


23.     With respect to Plaintiff's eleven applications for employment with IBM following his selection for termination, you told the EEOC that:

> "Eight of the requisitions Tsounos applied for were cancelled or placed on hold, without any candidates selected for hire.  In considering Tsounos for the remaining three requisitions, IBM determined that he was not the most qualified candidate."

       a.      Identify the requisitions that IBM allegedly cancelled or placed on hold;

       b.      Identify all documents and ESI that you contend prove IBM cancelled or placed on hold the eight requisitions;

       c.      State exactly why IBM cancelled or placed on hold the eight requisitions;

       d.      Identify the persons who made the decisions to cancel or place the positions on hold;

       e.      Identify by name, college graduation date, age and job title all persons who applied to each of the eleven positions for which Plaintiff applied;

       f.      Identify the minimum objective qualifications required for each job for which Plaintiff applied;

       g.      Identify the preferred objective qualifications for each job for which Plaintiff applied;

       h.      Identify by name, college graduation year, age and job title the persons IBM selected for the three requisitions that were not cancelled or placed on hold; and,

       i.      State whether any of the eight requisitions previously placed on hold or cancelled have now been filled, and if so, identify by name, college graduation year, age and job title the persons hired.

**ANSWER**:  IBM again raises its Rule 33(a)/26(b) objection, as this Interrogatory actually is at least eleven interrogatories disguised as one, and IBM responds to seven discrete interrogatories within this answer.  IBM further objects to this Interrogatory on the grounds that it seeks information in paragraphs c through g that is not relevant to any party's claim or defense, and is not proportional to the needs of the case, as it seeks information about job postings into which no one was hired and seeks college graduation dates (which ignores the fact that some individuals attend college or graduate school later in life).  IBM also objects to this request as being vague and ambiguous due to Plaintiff's failure to define the term "college graduation

date" without specifying whether it refers to undergraduate or post-graduate work that may have occurred long after an individual's undergraduate studies.  There is more than one potential meaning of that term, at least in the context of this case, and Defendant responds consistent with its own understanding of the undefined term.  Without waiving the foregoing objection and the General Objections set forth above, IBM responds as follows:

With respect to the First Discrete Subpart ("Identify the requisitions that IBM allegedly cancelled or placed on hold" and "Identify all documents and ESI that you contend prove IBM cancelled or placed on hold the eight requisitions") to which IBM responds, IBM's records reflect that the following positions were never filled:

- 46374BR (Sales Performance Management Technical Sales Professional)
- 46554BR (Watson Education - Cloud Engineer)
- 46585BR (Watson Education - Solutions Engineer)
- 47968BR (Bluemix Garage Architect)
- 48425BR (Pre-Sales Services Principal)
- 48720BR (Pre-Sales Engineer - Resilient Systems)
- 52194BR (WW Risk Analytics Software Technical Sales Specialist)
- 53579BR (Sr. Application Modernization Solution Architect)

As ESI, IBM identifies the Brassring histories related to each position, each of which reflects that no candidate commenced work in the position.

With respect to the Second Discrete Subpart ("Identify by name, college graduation date, age and job title all persons who applied to each of the eleven positions for which Plaintiff applied"), IBM responds regarding only the jobs that actually were filled, and only identifies by name the individuals who filled the jobs.  This Second Discrete Subpart response relates to 39008BR (Open Source Analytics Technical Evangelist - Great Lakes/Southeast), with respect to which IBM's records reflect that 23 individuals applied for the position, of whom 13 were external candidates (who do not disclose their age or date of birth as part of the application process).  Among the internal candidates, one withdrew from consideration after applying

because she accepted a different position within IBM.  Records reflect that six of the eight

remaining internal candidates (other than Plaintiff Tsounos) who applied who held the job titles

and graduated as follows; for two candidates there is no position data in IBM's Brassring

records: Client Technical Professional - Systems Middleware (1993), Big Data Technology

Evangelist (2016), MobileFirst IT Specialist (2009), Technical Sales Specialist (1997),

Technical Sales Specialist (1983), and Hadoop Technical Sales Specialist (1981).  The eighth

internal candidate, Merided ████REDACTED████ ered and accepted this position, and she graduated

from college in 1984 and was born on June 3, 1962.  One external candidate, Geral ███REDACTED███

was offered this position, and he graduated from college in 2016, but was born on October 16,

1976.  By way of further response, IBM directs (pursuant to Rule 33(d)) Plaintiff Tsounos to the

business records that it produced contemporaneous herewith, specifically the Brassring history

for this job posting.

Next, this Third Discrete Subpart response relates to 39171BR (Open Source Analytics

Solution Engineer - Great Lakes/Southeast), with respect to which IBM's records reflect that 26

individuals applied for the position, of whom 18 were external candidates (who do not disclose

their age or date of birth as part of the application process).  Among the eight internal

candidates, records reflect that the seven internal candidates (other than Plaintiff Tsounos) who

applied held the job titles and graduated as follows: Client Technical Professional - Systems

Middleware (1993), Technical Sales Specialist (1997), Technical Sales Specialist (1983), Senior

Software Engineer (1996), Technical Evangelist (2000), Technical Sales Specialist (1984) and

Software Engineer (1998).  Two external candidates were offered and accepted this position.

One was Jir ████REDACTED████ raduated from college in 2003 and was born on May 4, 1980.  The

other was Rya ████REDACTED████ aduated from college in 2008, and was born on April 1, 1981.

By way of further response, IBM directs (pursuant to Rule 33(d)) Plaintiff Tsounos to the

business records that it produced contemporaneous herewith, specifically the Brassring history

for this job posting.

Next, this Fourth Discrete Subpart response relates to 39223BR (Cloud Solution

Architect), with respect to which IBM's records reflect that 68 individuals applied for the

position, of whom 39 were external candidates (who do not disclose their age or date of birth as

part of the application process). Of the 29 internal candidates, records reflect 18 (including

Plaintiff) were excluded by the recruiter as being unqualified, and their resumes never reached

the hiring manager. An internal candidate was offered and accepted this job. His name was

Jesu REDACTED raduated from college in 2011 and was born on August 14, 1986. By way

of further response, IBM directs (pursuant to Rule 33(d)) Plaintiff Tsounos to the business

records that it produced contemporaneous herewith, specifically the Brassring history for this

job posting.

With respect to the Fifth Discrete Subpart ("Identify the minimum objective

qualifications required for each job for which Plaintiff applied" and "Identify the preferred

objective qualifications for each job for which Plaintiff applied") to which IBM responds that its

records reflect: 39008BR (Minimum of 2 years of relevant experience in building Open-Source

applications in Hadoop and Spark Technologies extending to Hive, Solr, Elastic Search, Flume,

Storm, and Kafka in both an on premise and cloud deployment model; Readiness to travel 25

per cent annually; English: Fluent); 39171BR (Minimum 3 years in building Production Grade

Open-Source applications in Hadoop and Spark Technologies extending to Hive, Solr, Elastic

Search, Flume, Storm, and Kafka in both an on premise and cloud deployment model;

Readiness to travel 25% travel annually; English: Fluent); and 39223BR (Demonstrated

knowledge of Cloud Infrastructure - systems, storage, security, networking, virtualization technologies of least 5 years; Working knowledge of key concerns and how they are addressed in Cloud Computing such as security, performance, auto provisioning, monitoring of least 5 years; Demonstrated experience with one or more Open Source Databases of 2 years and more; Understanding the software development life cycle, multiple experiences with agile software development, familiarity with test driven development, and cloud and mobile based application delivery -1+ years; Demonstrate an understanding of a Configuration Management Infra: Chef, Puppet, Salt, Ansible and similar - 2+ years; Demonstrated experience in one or more following Languages: Python, Ruby, JS, Java, SQL, C, Erlang - 2+ years).  By way of further response, IBM directs (pursuant to Rule 33(d)) Plaintiff Tsounos to the business records that it produced contemporaneous herewith, specifically the job postings.

        With respect to preferred objectives, IBM responds that its records reflect:  39008BR (MS in Computer Science/Computer Engineering, Science, Math or equivalent experience with focus on distributed computing; Understands Cloud Architectures (IaaS, PaaS) on OpenStack/AWS, and concepts of object oriented and functional programming. Solid understanding of application development processes and tools); 39171BR (MS in Computer Science/Computer Engineering, Science, Math or equivalent experience with focus on distributed computing; Contributions to / participation and community interactions in open source projects like Apache Hadoop or any Hadoop ecosystem is a very strong plus.); and 39223BR (Working experience in a DEVOPS or SRE team; Hands on experience with: - Configuration of Management framework based on one or more of these: Chef, Puppet, Ansible, Salt, - Monitoring framework based on one or more of these : - Nagios, Sensu, Cacti, Graphana, Splunk, StackStorm etc., - Deployment pipelines based on tools like Jenkins and can

demonstrate experience in building Package Repositories, - Patch Management of non-windows

systems, - Working with Baremetal would be Cobbler, Kickstart, Pre Boot Execution

Environment (PXE), and some inventory management tool like Collins, - Non-vendor based

Network tools like Quagga and Iptables, - Non-IBM Cloud like Amazon Web Services (AWS),

Azure, Rackspace, Google etc).  By way of further response, IBM directs (pursuant to Rule

33(d)) Plaintiff Tsounos to the business records that it produced contemporaneous herewith,

specifically the job postings.

     With respect to the Sixth Discrete Subpart ("Identify by name, college graduation year,

age and job title the persons IBM selected for the three requisitions that were not cancelled or

placed on hold") to which IBM responds:

| Requisition ID | Name REDACTED (Last Names) | College Graduation Year | Date of Birth | Current Job Title |
|---|---|---|---|---|
| 39008BR | Gerry | 2016 | 10/16/1976 | Senior IT Specialist (TECH/SS) |
| 39171BR | Jim | 2003 | 05/04/1980 | Conslt IT Specialist (Tech/Ss) |
| 39223BR | Jesus | 2011 | 08/14/1986 | Cloud Architect & Solution Engineer |
| 39008BR | Meridee | 1984 | 06/03/1962 | Conslt IT Specialist (Tech/Ss) |
| 39171BR | Ryan | 2002 | 04/01/1981 | Senior IT Specialist (Tech/Ss) |

     With respect to the Seventh Discrete Subpart ("State whether any of the eight

requisitions previously placed on hold or cancelled have now been filled, and if so, identify by

name, college graduation year, age and job title the persons hired") to which IBM responds:

Records (produced contemporaneously herewith) reflect that none have been filled to date.

**Please note that IBM has responded to twenty-five (25) interrogatories through Interrogatory No. 23.**

Dated:  June 29, 2017

Respectfully submitted,

James S. Urban
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219-2514
Telephone:  (412) 391-3939
Facsimile:  (412) 394-7959
**ATTORNEY FOR DEFENDANT**

## **VERIFICATION**

I, Ryan Zombo, state that I serve as Consulting IT Specialist Manager for International Business Machines Corporation (IBM); that in that capacity, I am an authorized agent of IBM for the purpose of verifying Defendant IBM's Responses to Plaintiff's First Set of Interrogatories; that the matters as a whole stated in these responses are not within the personal knowledge of any single person at IBM; that the facts and data provided in these responses have been assembled by authorized employees; and that these responses are hereby verified in accordance with Federal Rule of Civil Procedure 33.  I verify under penalty of perjury under the laws of the United States of America that the foregoing paragraph is true and correct.

June 29, 2017

Ryan Zombo

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Defendant's Objections and Answers to

Plaintiff's First Set of Interrogatories was served upon the following individuals via First Class

U.S. Mail and electronic mail on this 29th day of June, 2017:


Charles A. Lamberton, Esq.
Lamberton Law Firm, LLC
707 Grant Street
The Gulf Tower. Suite 1705
Pittsburgh, PA  15219
cal@lambertonlaw.com