Tab B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW G. TSOUNOS,** | ) | **Civil Action No. 17-409** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Hon. David R. Cercone** |
| **vs.** | ) | |
| | ) | |
| **INTERNATIONAL BUSINESS** | ) | |
| **MACHINES CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____/ | | |

**PLAINTIFFS' FIRST SET OF INTERROGATORIES AND**
**REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT**

Plaintiff, by and through undersigned counsel, propound the following discovery

directed to Defendant International Business Machines Corporation ("Defendant" or "IBM").

Pursuant to Fed. R. Civ. P. 33, Plaintiff requests that Defendant answer each Interrogatory

herein, separately and fully, in writing and under oath, within thirty (30) days from the date of

service hereof.  Furthermore, in conformity with Fed. R. Civ. P. 34, Plaintiff requests that

Defendant produce the within requested documents within thirty (30) days from the date of

service hereof at the offices Charles A. Lamberton, Esq., Lamberton Law Firm, LLC, 707 Grant

Street, Suite 1705, Pittsburgh, Pennsylvania 15219.

**DEFINITIONS**

The following definitions will apply to each of the following Discovery Requests:

1. "You," "your," "Defendant," and "IBM" shall refer to International Business

Machines Corporation, as well as its respective officers, agents, servants, employees,

independent contractors, attorneys, predecessors, successors and assigns, representatives, and all other persons acting or who have acted on its behalf.

2.      "Person" shall mean the plural as well as the singular, and shall include any natural person, and any firm, association, partnership, join venture, business trust, corporation, governmental or public entity, department, organization, agency, office, or any other entity.

3.      "Document" shall have the most expansive possible meaning under the Federal Rules of Civil Procedure, and shall be construed broadly to include any medium upon which intelligence or information can be recorded or retrieved, and includes, without limitation, the following, whether printed, typewritten, recorded, filmed or reproduced by any mechanical process or written or produced by hand, and whether an original, master or copy, and whether or not claimed to be privileged from discovery, including:  worksheets, agreements, books, records, letters, accounts, notes, summaries, forecasts, appraisals, surveys, estimates, diaries, desk calendars, reports, communications (including intra-company communications), correspondence, facsimiles, electronic mail messages, telegrams, memoranda (including intra-company memoranda), summaries, notes and records of telephone conversations (including voicemail messages), meetings, and conferences, notes in reference to personal conversations or interviews, contracts, notices, drafts of any document, business records, charts, schedules, diaries, computer printouts, computer-stored data (including e-mails), computer tapes or computer disks, microfilm, microfiche, photographs, slides, negatives, motion pictures, video recordings, tape or other voice recordings and transcriptions thereof, data compilations from which information can be obtained or translated and any other information contained on paper, in writing, in graphical media, in any computer readable media, or in any other physical form in your actual or constructive possession, custody or control.

4.      "Communication" shall mean any manner or form of communication or message, transaction or transmittal, however produced or reproduced, whether by "document," as defined above, orally, electronically or otherwise, that was made, distributed or circulated between or among persons, including, without limitation, e-mails, and any and all documents containing, consisting of, or in any way relating or referring to, either directly or indirectly, a communication.

5.      "Statement" shall mean: a. a written statement, signed or otherwise, adopted or approved by the persons making it; b. a stenographic, mechanical, electronic or other recording, or a transcription thereof, which is substantially a verbatim recitation of an oral statement by the person making it and contemporaneously recorded.

6.      "Identify," when used in reference to:

   a.      a natural person, shall mean to state the person's full name, present or last-known address, e-mail address and telephone number, present or last-known position and business affiliations, and each of his or her positions during the applicable time period;

   b.      a company, corporation, association, partnership, or other business or legal entity, not a natural person, shall mean to state its full legal name, the name under which it does business, the address and telephone number of its principal place of business, the type of entity (e.g., corporation, partnership, etc.);

   c.      a document or communication, oral or written, means shall mean to state its date, all persons involved, it author, its subject, a description of its substance, its type (e.g., letter, memorandum, telegram, e-mail, etc.), or, if the above information is not available, the best description possible, and if a document, its present location and the names of each of its present custodians.  If any such document was, but is no longer, in Defendant's possession, custody or control, or in existence, you shall state whether it is missing or lost, has been destroyed, has been transferred, voluntarily or involuntarily, to others or otherwise disposed; and in each instance, explain the circumstances surrounding an authorization for such disposition thereof and state the approximate date thereof;

3

d.      an act, shall mean to describe the act and to state the date and place of its occurrence, the identity of the person acting, the identity of the person for whom the act was performed, the identity of the person at who the act was directed, and the identity of all witnesses to the act, and the purpose of the act.

**7.      "Decisional Unit" means that portion of IBM's organizational structure from which IBM made choices about who would be selected for reduction and who would not be selected for reduction.[1]**

8.      "Describe" shall mean to explain fully by reference to underlying facts rather than by ultimate facts or conclusions of fact or law; and to specify as to persons, time, place and manner.

9.      "Date" shall mean the exact day, month and year, if ascertainable, or, if not, the best approximate possible time of occurrence (including the temporal relationship to other events).

---

[1]      Force reductions are typically structured along one or more of the following lines:

a.      *Facility-wide:* Example - Ten percent of the employees in the Springfield facility will be terminated within the next ten days;

b.      *Division-wide:* Example - Fifteen of the employees in the Computer Division will be terminated in December;

c.      *Department-wide:* Example - One-half of the workers in the Keyboard Department of the Computer Division will be terminated in December;

d.      *Reporting:* Example - Ten percent of the employees who report to the Vice President for Sales, wherever the employees are located, will be terminated immediately;

e.      *Job Category:* Example - Ten percent of all accountants, wherever the employees are located, will be terminated next week.

In each example above, the decisional units are respectively: a. The Springfield facility; b. The Computer Division; c. The Keyboard Department; d. All employees reporting to the Vice President for Sales; and e. All accountants.

10.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Discovery Requests all responses that might otherwise be construed to be outside of its scope.

**11.     "Millennial" or "Millennials" shall mean persons born after 1980 and shall include "Generation Y," "Echo Boomers," "Trophy Kids" and the "Trophy Generation." "Generation X" shall refer to persons born roughly from the early to mid-1960s through the early 1980s.  "Baby Boomers" shall refer to persons born roughly from 1946-1964.**

12.     "Relating" includes, without limitation, constituting, referring to, alluding to, responding to, concerning, connected with, commenting upon, in respect to, about, regarding, discussing, showing, describing, reflecting or analyzing.

13.     "RIF" shall mean any Resource Action, reduction-in-force, layoff or group termination program affecting two or more employees, and shall refer solely to IBM's United States' operations unless otherwise specified.

14.     "Personnel File" or "Personnel Records" shall mean any and all documents or information related to an individual employee's employment relationship with Defendant, including, but not limited to employment decisions (e.g., hiring, compensation, training, promotion, demotion, transfer, termination, layoff, retirement, separation, etc.), whether or not stored in a central file or repository.

## INSTRUCTIONS

The following instructions apply to each of the following Interrogatories and Requests for Production of Documents (collectively, the "Discovery Requests"):

1.     These discovery requests are being made pursuant to the Federal Rules of Civil Procedure, including, without limitation, Rules 26, 33 and 34.  Accordingly, your responses to such Discovery Requests must comply with the requirements set forth in the Rules, which are referred to and incorporated herein by reference.

2.     Furnish all information, items and documents known or available to you regardless of whether such information, items and documents are directly in your possession or that of your agents, representatives or experts.  These Discovery Requests include production of all responsive information, items and documents in the possession, custody or control of your agents, representatives or other persons directly or indirectly retained by Defendant, or anyone else acting on your behalf or otherwise subject to your control.

3.     If any requested documents or item is no longer in your possession, custody or control, state the following:

   a.     What was done with the document or item;

   b.     When such document or item was created;

   c.     The identity and address of the current custodian;

   d.     The reasons for transfer or disposal; and

   e.     The identity and address of the person who decided to transfer or dispose of the document or item.

4.     Respond to these Discovery Requests fully and completely.  Where precise or exact information, data or dates requested are not available, state approximate information, data, or dates with a designation that such information, data or dates are approximate rather than exact.

6

5.      If any of the Discovery Requests cannot be answered fully and completely, respond to the extent possible, specifying the reasons for your inability to answer the remainder and state the substance of your knowledge, information and belief concerning the subject matter of the unanswered portion.  Such a statement should include the steps taken to locate any responsive documents or the requested information.

6.      These Discovery Requests are continuing in nature, and require supplemental responses and production if you or anyone on your behalf obtains additional information, items and/or documents, or if additional information, items and/or documents become available to you, between the time the responses are served and the termination of any trial on the matters in this action.

7.      Retain in your possession, custody or control, and to refrain from destroying and/or modifying, any document or item requested herein that is in your possession, custody or control as of the date of service of these Discovery Requests or that comes into your possession, custody or control subsequent to the date of service of these Discovery Requests.

8.      If anything has been deleted or redacted from a document produced in response to these Discovery Requests, state the following in your response:

       a.      Specify the nature of the material deleted or redacted;

       b.      Specify the reason for the deletion or redaction; and

       c.      Identify the person responsible for the deletion or redaction.

9.      If objection is made to producing any document or item, or any portion thereof, or to disclosing any information contained therein, on the basis of any claim of privilege, specify in your response the nature of such information, items or documents, along with the nature of the

privilege claimed, so that the Court may rule on the propriety of the objection.  Specifically, you should state the following:

      a.      The title of the document or item;

      b.      The nature of the document or item;

      c.      The author or sender;

      d.      The addressee;

      e.      The date of the document or item;

      f.      The name of each person to whom the original or a copy was shown or circulated;

      g.      The name(s) appearing on any circulation list relating to the document or item;

      h.      The basis upon which privilege is claimed; and

      i.      A summary statement of the subject matter of the document or item in sufficient detail to permit the court to rule on the propriety of the objection.

A privilege log, as detailed above, shall be served on Plaintiffs no later than thirty (30) days from issuance of these Discovery Requests.

      10.      Wherever appropriate in these Discovery Requests, the singular from of a word shall include the plural, and vice versa.

      11.      Production format – Plaintiff requests that ESI be produced in its native format with metadata, together with any software required to view the native ESI or otherwise make it useable.  The following are examples of native format: Word documents, .DOC and .DOCX; Excel Spreadsheets, .XLS and .XLSX; PowerPoint Presentations, .PPT and .PPTX; Microsoft Access Databases, .MDB and .ACCDB; WordPerfect documents, .WPD; Acrobat Documents, .PDF; Images, .JPG, .JPEG and .PNG.

E-mail messages should be produced in a form or forms that readily support import into standard e-mail client programs: for Outlook messages, .PST format, for IBM Notes e-mail (formerly Lotus Notes), .NSF format or converted .PST format.  If it is necessary to extract attachments and produce them separately from their transmitting messages, they should be produced in their native forms with parent/child relationships to the message and containers preserved and produced in a delimited text file.

Documents that do not exist in native electronic formats or require redaction should be produced in searchable PDF format with logical utilization preserved.

12.     Medium for production:  To the extent agreeable to IBM, cost effective and subject to negotiation by the parties, hosted production on a secure website; production on physical media such as a hard drive is also acceptable.

13.     Documents and items should be produced with an appropriate indication as to the paragraph under which they are being produced.

14.     Where possible, documents are to be produced with sequential and unique Bates labeling.

15.     In responding to these Discovery Requests, conduct a full search of all information repositories (local, offsite, backup media and archive media (including, without limitation, employees' personal systems, and third party service provider systems accessible by defendant's personnel) to determine the current storage location, origination point, and path traveled (including distribution path and recipients), of each file, image, multimedia component, and audio component of responsive information and/or documents.

## <u>INTERROGATORIES</u>

1.      Identify each person providing information, assistance and/or who was consulted in any way in connection with answering any of the following interrogatories.  For each such person, specify each interrogatory for which he or she provided information, assistance and/or consultation, as well as the nature and content of the information, assistance and/or consultation provided.

**<u>ANSWER</u>:**

2.      Identify the person who made the final decision to terminate Plaintiff, state whether the decision was reviewed by any other person at IBM, and if so, by whom, and state the purposes and conclusions of such review.

**<u>ANSWER:</u>**

3.      State the exact reason why the final decisionmaker terminated Plaintiff's employment, describe chronologically each step of the decisionmaking process, and identify and explain the decisionmaker's reasoning behind all ratings, rankings or reviews of Plaintiff, and of any other IBM employee against whom Plaintiff was compared in reaching the decision to terminate Plaintiff's employment.

With respect to comparators, your response should address persons considered for termination and selected for termination, persons considered for termination and not selected for termination, and persons  not considered or exempt from consideration for termination.

If the final decisionmaker received recommendations or input from another person on who to select for termination and who not to select, identify such other person, state their recommendations or input, state whether the final decisionmaker followed them/it, and if not, why not.

**ANSWER:**

      4.      Identify all written and oral reviews, evaluations, rankings, ratings or comments upon Plaintiff's performance, whether as part of an annual performance review or not, whether positive or negative, made by any supervisor, manager, executive, co-worker or client of IBM from October 1, 2014 forward.  Include in such description:

      a.      The date of the reviews, evaluations, rankings, ratings or comments;

      b.      Whether it was communicated to Plaintiff, and the date of the communication;

      c.      The person who made the reviews, evaluations, rankings, ratings or comments;

      d.      The identity of any person who considered, approved, reviewed, or acted upon the reviews, evaluations, rankings, ratings or comments in any respect, and the details of the action taken;

      e.      The substance of the reviews, evaluations, rankings, ratings or comments; and,

      f.      An identification of the reviews, evaluations, rankings, ratings or comments if in writing or if made orally and later reduced to writing or written memorandum.

**ANSWER:**

13

5.      Identify and state with particularity all actions IBM has taken to recruit, attract, engage and/or retain Millennials (as the term "Millennials" is defined above), since January 1, 2012, and include in your response an identification of all meetings, communications, documents and ESI that reference, reflect or relate to IBM's plans, strategies, actions or efforts to recruit, attract, engage and/or retain Millennials.

**ANSWER:**

6.      Your Senior Brand Strategist Bill Grady has written:

> At IBM, Millennials are driving much of our
> transformation - from how we recruit and train
> employees, to how we engage with our clients.  ***
>
> IBM has changed the way we design our products, which
> are now tailored to the digital expectations of
> Millennial users.  Millennial designers are embedded
> in product development teams to help them understand
> the specific needs of Millennial users.  For example,
> last year IBM Bluemix, our cloud developer platform,
> was the first result of this new approach.  IBM
> Verse, our new social email tool, was designed by
> Millennials, with Millennials in mind.  The same is
> true for the rest of IBM's software portfolio - data
> analytics, security, mobile - all designed with
> strong Millennial influence.
>
> Our study leaves no doubt that Millennials are
> fundamentally reshaping the way people work, and that
> organizations must transform themselves to remain
> relevant.  While they might be more inclined to send
> a text than make a phone call, the fact is,
> Millennials are essential to our workforce.  And the
> opportunity is enormous.[2]

With respect to Mr. Grady's assertions, describe in detail the following:

   a.      How Millennials are driving IBM's transformation, specifically
           identifying each way Millennials have changed or transformed how IBM
           recruits and trains employees, and each way Millennials have changed or
           transformed how IBM engages with its clients;

   b.      All product design changes that IBM has made to tailor IBM products to
           the digital expectations of Millennial users;

   c.      State whether IBM has assigned, embedded or otherwise staffed any teams
           with Millennials, identify all such teams including specifically sales
           teams, pre-sales teams, and technical specialist teams, and state IBM's
           reasons for same;

   d.      State whether it is true that "a company's millennial employees are its
           most valuable and accessible asset when it comes to successfully capturing

---

[2]      *When the Workplace Gets Tough, Millennials Get Working (No, Seriously)*, February 25,
2015, accessed April 20, 2017, available at  https://blog.ibm.jobs/2015/02/25/when-the-
workplace-gets-tough-millennials-get-working-no-seriously/.

the hearts, minds … and wallets, of the millennial generation,"[3] and state the factual bases for your answer; and,

    e.    State whether it is true that "[s]enior leaders at IBM uncovered this secret a year and a half ago when they realized that no one knows what the millennial generation desires or responds to more than actual millennials[,]"[4] and state the factual bases of your answer.

**ANSWER:**

---

[3]    *How IBM Is Cracking the Millennial Code, July 12, 2016*, accessed April 20, 2017, available at https://blog.ibm.jobs/2016/07/12/how-ibm-is-cracking-the-millennial-code/.

[4]    *Id.*

7.      Identify and describe with particularity your campus/college/university recruiting programs in the United States, and your internship and leadership/development programs in the United States (*e.g.*, Extreme Blue and Consulting by Degrees), providing the following information at a minimum:

a.      A descriptive summary of your campus/college/university recruiting programs, internships and leadership/development programs, identifying their respective purpose(s),

b.      The average age of persons recruited through your college/university/campus recruiting programs in 2015 and 2016;

c.      The average age of participants in Extreme Blue in 2015 and 2016;

d.      The average age of participants in Consulting by Degrees in 2015 and 2016;

e.      The number of graduates recruited/hired through your college/university/campus recruiting programs in 2012, 2013, 2014, 2015 and 2016;

f.      The required criteria for eligibility for hiring through your college/university/campus recruitment programs, including graduation dates in a specific year and whether candidates must be currently or recently affiliated with a college/university/campus;

g.      The required criteria for eligibility to participate in Extreme Blue or Consulting by Degrees, including whether Baby Boomers are permitted to participate; and,

h.      An identification of all documents and ESI referencing or relating to your college/university/campus recruiting programs, internship and leadership/development programs, including all documents and ESI that advertise/promote/market same, and that reflect any demographic, participation or hiring statistics for same.

**ANSWER**:

17

8.      From January 1, 2012 to the present, identify all research, studies, investigations, examinations, analyses, surveys, audits or reviews IBM or its agent has conducted or adopted that reference, discuss or relate to age, age demographics, applicant or employee generations, Millennials, Generation X, Baby Boomers, the actual or perceived traits of any age generation, or the age demographics of IBM's actual or desired workforce.

**<u>ANSWER:</u>**

9.      For the period from January 1, 2012 to the present, describe with particularity all of IBM's efforts to internally and externally brand to Millennials or to the Millennial Generation, whether as prospective employees, current employees, prospective IBM customers, current IBM customers, or as members of the public.

**ANSWER:**

10.     For each RIF taking place in the United States at any time from January 1, 2014 to the present, including the RIF that separated Plaintiff from employment, state, describe and identify:

    a.    The date and name of the RIF, the Decisional Unit, the locations affected by the RIF, and all circumstances which led IBM to implement the RIF;

    b.    Whether a written RIF plan was developed, and if so, by whom, describe the substance of the plan, identify all persons who reviewed the plan prior to implementation, all persons who implemented the plan, all meetings held about the RIF plan, and all documents or ESI that reference or relate to the RIF plan;

    c.    All criteria for selecting employees to be terminated, including in your response a precise description of how the selection criteria were decided upon, a precise statement of each of the facts upon which IBM based its termination selections describing how the criteria were applied to each employee considered for termination, the identity of each person who had input to the decision to terminate these employees and/or who had input into developing, drafting or creating the selection criteria, the identity of each person who made the final decisions related to termination of these employees, and, if the selection criteria differed from those IBM used in prior or subsequent RIFs, state the differences and explain why they differed;

    d.    Whether the RIF was related to or a continuation of one or more prior RIFs, contemporaneous RIFs or successive RIFs, including whether said RIFs were part of an overall "workforce transformation" or "workforce rebalancing";[5]

    e.    The stated and/or actual objectives of the RIFs, including specifically how the RIFs related to IBM's "efforts to reinvent [its] core hardware, software and services franchises, while investing to create new ones - in cloud, data, cognitive, security and the other businesses that comprise [IBM's]

---

[5]     *See, e.g.*, 2016 IBM Annual Report, p. 29 ("Base expense also includes charges in 2016 for actions taken to accelerate the transformation of the company's workforce and shift its skill base, as well as increased investments in the strategic areas of cognitive, security and cloud. This included a higher level of workforce rebalancing charges ($451 million) year to year and real estate capacity charges ($291 million) related to the workforce transformation.  The company continued to invest at a high level in 2016 and remixed skills in support of the strategic imperatives.") accessed April 13, 2017 at https://www.ibm.com/annualreport/.

strategic imperatives;"[6]

    f.    Whether the RIF was intended to facilitate the hiring of Millennials, make room for Millennials to join IBM, or otherwise create employment opportunities for Millennials at IBM; and,

    g.    Any other intended connection between the RIF, Millennials and IBM's "workforce transformation" or "workforce rebalancing."

**ANSWER:**

---

[6]    *Id.* at p. 19.

11.     Describe the capabilities of CERIS, identify all reports that CERIS can generate which contain or reflect information about applicant or employee demographics, including age,[7] and identify all CERIS data fields.  Please provide the same information for IBM's RMA database, and describe the uses of IBM's RMA database.  If IBM uses any other database to store, track or analyze information about applicants or employees (e.g., COGNOS), please identify such other databases and provide the same information for such other databases.

**ANSWER:**

---

[7]     For example, IBM's COGNOS database will produce Workforce Performance reports in the analysis areas of Demographic Hiring, Demographic Performance, Demographic Progression and Demographic Turnover, each with specific hierarchies, measures, filters and reports (click on the thumbnail below for COGNOS's specific capabilities).  Plaintiff wishes to know the capabilities of CERIS along the same lines as the capabilities of COGNOS are explained in the COGNOS User Manual.



12.     Since January 1, 2013, has IBM run or posted any job ads for employment in the United States that require applicants to still be in college or graduate school, or to have graduated in or after a certain year, or to have a maximum number of years of work experience?  If so, kindly identify all such job ads.   If you answer in the negative, identify every step you took to verify the accuracy of your answer.

**ANSWER:**

13.     Identify all statistical tests, analyses or studies you conducted in connection with any force reduction taking place in the United States at any time from January 1, 2014 to the present, describe your methodology, state the purposes and results of said tests, analyses or studies, identify the software you used, the names and job titles of the persons conducting the tests, analyses or studies, the persons to whom the results were reported, and all documents, ESI and communications that reflect, reference or relate to the conducting of said tests, analyses or studies, or the purposes or results of same.

**ANSWER:**

14.     For each RIF taking place in the United States from January 1, 2014 to the

present, identify by name, job position/title, college graduation year and age:

      a.     All employees selected for termination who applied for other jobs with
             IBM within the 90-day working notice period; and,

      b.     All employees selected for termination who applied for other jobs with
             IBM within the 90-day working notice period who were hired by IBM.

**<u>ANSWER:</u>**

15.     Identify all persons currently or formerly employed by IBM who have made complaints and/or allegations regarding discrimination based on age at any time since January 1, 2013, including, but not limited to, internal complaints, charges filed with the EEOC or a state FEPA, demands for arbitration and/or complaints filed in federal or state courts

**ANSWER:**

16.     Please identify all employees you contend are similarly-situated to Plaintiff for purposes of analyzing Plaintiff's termination claims and his failure to hire claims, and IBM's defenses to those claims, and precisely state your reasons for same.

Include in your answer all factors you believe are relevant in assessing whether two or more employees are similarly-situated, such as job band, job ID, job title, supervisor, job category and/or secondary job category, job family, job country, experience level, geographic region, business unit or sub-unit, Group ID, Blue Matching results, Gearbox matches and/or JRSS, and your reasons for believing said factor(s) is/are relevant.  Also include in your answer all factors you contend render two or more employees not similarly-situated for purposes of comparison with respect to a disparate treatment claim under the ADEA.

**ANSWER:**

17.    Identify:

    a.    Plaintiff's base salary as of March 1, 2016;

    b.    All merit pay (e.g., bonuses, cash awards, commissions, prizes) Plaintiff earned in 2015 and 2016 respectively; and,

    c.    Every fringe benefit Plaintiff had as an IBM employee as of March 1, 2016, including the monetary value thereof.

**ANSWER**:

18.     Explain how IBM calculated sales commissions / incentive pay for Plaintiff in 2015 (and any other part of Plaintiff's non-salary 2015 compensation that was based in whole or in part on Plaintiff's performance), identifying all sales on which Plaintiff earned commissions, the commissions Plaintiff earned, the calculation used for said commissions, and all documents/ESI that reflect or relate to Plaintiff's sales commissions and comparative sales performance against other employees from October 1, 2014 through the date Plaintiff was selected for termination.

**<u>ANSWER:</u>**

19.     Identify the IBM executive most knowledgeable about:

    a.     Ginni Rometty's speech delivered on April 26, 2016, available at https://www.ibm.com/ibm/ginni/04_26_2016.html, (wherein she said, *inter alia*, "[I]n 2014 [IBM] pivoted and restructured."  It "divest[ed] commoditizing businesses, restructur[ed] others and accelerat[ed] [IBM's] strategic imperatives - Data, Analytics, Cloud, Mobile, Social and Security….");

    b.     IBM's brand; and,

    c.     IBM's "workforce transformations" or "workforce rebalancing" since and including 2014.

If your Answer(s) is/are anyone other than Chief Executive Officer Ginni Rometty, state

every reason why you believe the person(s) you identify has/have more knowledge than Ms.

Rometty.

**ANSWER:**

20.     Identify all commendations, honors, praises, recognitions, cash or non-cash awards, prizes, gifts, vacations or other distinctions Plaintiff earned or was awarded from October 1, 2014 through the date of his selection for termination, and provide the same information for all other members of the Analytics sales team reporting to Ryan Zombo during the same time period of time.

**ANSWER:**

21.     For all Resource Actions occurring from October 6, 2015 to the present, identify by name, address, phone number, personal email address if known, age and college graduation year:

        a.     All persons over the age of 40 selected for termination with a 2+ or higher PBC rating in the year preceding their selection for termination who executed a Separation and Release Agreement; and,

        b.     All persons over the age of 40 selected for termination with a 2+ or higher PBC rating in the year preceding their selection for termination who did not execute a Separation and Release Agreement.

**ANSWER:**

22.     State the name and address of each witness you expect to call to testify as an expert at trial, and as to each such person, state the field of his/her expertise, the subject matter on which such person is expected to testify, the facts and opinions to which such person is expected to testify, and the bases of each opinion.  Please further provide a detailed list of all publications each such person has authored, or co-authored, and the name of the publication in which the article has appeared, or the name of the publisher who has published the article, and enough information about the publication to enable the Plaintiff to obtain it

**<u>ANSWER</u>:**

23.     With respect to Plaintiff's eleven applications for employment with IBM following his selection for termination, you told the EEOC that:

> "Eight of the requisitions Tsounos applied for were cancelled or placed on hold, without any candidates selected for hire.  In considering Tsounos for the remaining three requisitions, IBM determined that he was not the most qualified candidate."

    a.     Identify the requisitions that IBM allegedly cancelled or placed on hold;

    b.     Identify all documents and ESI that you contend prove IBM cancelled or placed on hold the eight requisitions;

    c.     State exactly why IBM cancelled or placed on hold the eight requisitions;

    d.     Identify the persons who made the decisions to cancel or place the positions on hold;

    e.     Identify by name, college graduation date, age and job title all persons who applied to each of the eleven positions for which Plaintiff applied;

    f.     Identify the minimum objective qualifications required for each job for which Plaintiff applied;

    g.     Identify the preferred objective qualifications for each job for which Plaintiff applied;

    h.     Identify by name, college graduation year, age and job title the persons IBM selected for the three requisitions that were not cancelled or placed on hold; and,

    i.     State whether any of the eight requisitions previously placed on hold or cancelled have now been filled, and if so, identify by name, college graduation year, age and job title the persons hired.

**ANSWER**:

34

## REQUESTS FOR PRODUCTION

1.      Any and all documents identified in, or that you referred to, relied upon or consulted in preparing your responses to the foregoing Interrogatories.  Each document should be marked and separated so as to indicate the Interrogatory answer in which the document was identified or as to which it was consulted.

2.      Any and all documents, data compilations, and tangible things that are in your possession, custody or control that are relevant to the claims or defenses asserted in this case, regardless of whether they are supportive of your position, including without limitation any documents not yet produced that were identified in IBM's Initial Disclosures or that formed any part of the support for the assertions in IBM's Position Statement to the EEOC.

3.      All documents and correspondence you sent to or received from the EEOC in connection with Plaintiff's Charge of Discrimination No. 533-2016-01393.

4.      All documents that support your Affirmative Defenses or your denials of any of the averments in Plaintiff's Complaint.

5.      All documents and ESI that the final decisionmaker created, considered, relied upon or followed in selecting Plaintiff for termination.

6.      Any and all Personnel Records (as defined above), PBCs, records from any PBC Assist Tool, commendations, rewards, congratulations, honors, written performance evaluations and all drafts thereof, referring or related to Plaintiff's employment with IBM, including all emails, text messages, instant messages, chat room conversations and other communications describing or commenting upon – whether positively or negatively – Plaintiff's job performance.

7.       Any and all Personnel Records (as defined above), PBCs, records from any PBC Assist Tool, commendations, rewards, congratulations, honors, written performance evaluations

35

and all drafts thereof, referring or related to IBM's employment of any person against whom Plaintiff was compared for purposes of reduction, including all emails, text messages, instant messages, chat room conversations and other communications describing or commenting upon – whether positively or negatively – such other persons' job performance.

8.      All reports and documents from IBM Sales Tracker reflecting the comparative monthly and annual performance (by all metrics, including quota performance, earnings, incentive plan accelerators or any other metric) of Plaintiff against other North American Analytics Technical Sales Specialists reporting to Ryan Zombo or David Kevnick from November, 2014 through the date Plaintiff was selected for termination.

9.      The complete Personnel file of each IBM employee reporting to Ryan Zombo as of May 1, 2016.

10.     Any and all employee handbooks and benefit descriptions for IBM employees in existence as of January 1, 2016, including but not limited to any and all versions of any EEO or anti-discrimination policy.

11.     All documents describing the qualifications necessary to perform the positions occupied by each person Zombo considered for termination in the force reduction that separated Plaintiff from employment.

12.     Any and all documents, including but not limited to reports, memoranda, emails and data compilations, which you contend are relevant to validating the qualifications set forth in the documents responsive to the preceding Document Request.

13.     Any and all written policies, procedures and/or guidelines of IBM related to discharge, promotion, hiring, discipline, Resource Actions, RIFs and other personnel actions in effect in 2016.

36

14.     Any and all guidelines, rules, procedures and policies that governed the RIF that separated Plaintiff from employment, including any written standards, guidelines or instructions to determine how a RIF should be conducted or how employees should be selected for termination.

15.     Any and all documents describing policies and procedures to monitor how RIF decisions were actually made with respect to the force reduction that separated Plaintiff from employment.

16.     Any and all documents reflecting RIF-related training of any kind provided to employees who responsible for, or who participated in carrying out, the RIF that separated Plaintiff from employment.

17.     Any and all EEO-1 reports, including all draft versions thereof, prepared and/or filed by IBM from January 1, 2013 to present.

18.     Spreadsheets that reflect the ages or any other age-related demographic data about employees considered and selected for reduction, considered and not selected for reduction, and those not considered for reduction, in any RIF occurring in the United States from January 1, 2014 to the present.

19.     Excluding privileged communications, from January 1, 2013 to the present, all documents created, sent, or received by IBM regarding any proceedings before the EEOC, the PHRC (or equivalent agency in any other state), any panel of arbitrators, or any federal or state court regarding claims of age discrimination by persons age 40 or older, including, but not limited to charges of discrimination, affidavits in support of summary judgment or otherwise, Defendant's response to such charges filed with such agencies (including any Position

Statements), memoranda, e-mails, conventional correspondence, notes, minutes of meetings, phone messages, pleadings and discovery responses.

20.     Any and all documents reflecting or related to Defendant's document retention/destruction policies, including without limitation any litigation hold orders issued with respect to the claims or defenses in this action.

21.     Any and all IBM organizational charts showing changes in personnel and/or employment positions before and after the RIF that separated Plaintiff from employment.

22.     Any and all documents, including but not limited to all statistical tests, statistical analyses, studies or similar documents, conducted by any IBM executive, supervisor, human resources official or an attorney, analyzing the ages of employees selected for termination in any force reduction, and/or those not selected for termination in any force reduction taking place in the United States at any time from January 1, 2014 to December 31, 2016.

23.     For the period from January 1, 2012 to the present, any and all studies, analyses, audits, surveys, communications or other documents or ESI that discuss, reference or relate to any plan, strategy, goal or effort to change the age demographics of IBM's workforce.

24.     Copies of each and every email or other communication sent, received, cc'd or forwarded by or to each and every individual who participated in the selection of employees for termination in the RIF that separated Plaintiff from employment, that in any way relate to that RIF, including attachments.

25.     Any and all Personnel Records, including written performance evaluations and drafts thereof, for any IBM employee currently performing any of the job functions previously performed by Plaintiff.

26.     Any and all documents that refer, support, reflect or relate to the business justification(s) for the RIF that separated Plaintiff from employment.

27.     Any and all documents which refer, support, reflect or relate to any validation studies conducted with respect to any selection or ranking criteria, procedure or methodology relied upon in conducting the RIF that separated Plaintiff from employment.

28.     The documents and ESI that support your assertion to the EEOC that "Tsounos was selected for the reduction in force because, when compared to his team member's *[sic]* strong work performance, his performance was mediocre and below IBM's reasonable expectations."

29.     The documents and ESI, including all ratings, notes, communications and other items, that support, reflect or relate to your assertions to the EEOC that

> "At the end of 2015, Zombo evaluated each of the members of his team across four key performance indicators - client valued skills, IBM values, teamwork, and leadership.  Zombo awarded each individual a score of exceeds, meets, or less than the performance of others on the team, ultimately classifying each individual as either high, medium or low performance.  Tsounos was scored a "meets" in every category, resulting in a "medium" performance ranking. Medium was the lowest ranking Zombo awarded in these reviews."

30.     The documents and ESI that support, reflect or relate to your assertion to the EEOC that "In March 2016, IBM conducted a reduction in force based on business necessity."

31.     The documents and ESI that support, reflect or relate to your assertion to the EEOC that "When reviewing employees for possible reduction, IBM considered the following factors: sales, technical experience, communication, and leadership."

32.     The documents and ESI that reference or reflect how IBM measures sales, technical experience, communication and leadership when reviewing employees for possible reduction, including any objective criteria used to ensure uniform application across employees.

33.     The documents and ESI, including all notes, RIF guidelines, instructions, guidance and related materials, that support, reflect or relate to your assertion to the EEOC that "Zombo evaluated four individuals, including Tsounos, who performed the same job function across these four factors, awarding each individual a high, medium, or low mark on each factor."

34.     All information referencing or relating to the process by which Zombo selected the four individuals to be considered for termination, and his basis or reasoning for not selecting others.

35.     The documents and ESI that support, reflect or relate to your assertions to the EEOC that:

> "Tsounos … scored medium on sales. This ranking reflected an acknowledgment by Zombo that Tsounos's sales numbers did not accurately depict his own efforts to generate revenue and client development. Instead, Tsounos's numbers were artificially inflated by assisting with client work driven by other Presales Technical Specialists."

36.     The documents and ESI that support, reflect or relate to your assertion to the EEOC that:

> "Tsounos scored a medium on his technical knowledge–the lowest of any member of his team."

37.     The documents and ESI that support, reflect or relate to your assertions to the EEOC that:

> "Tsounos scored low on communication. Tsounos's score in this area reflected feedback from sales and technical representatives who worked with Tsounos. These individuals frequently complained that Tsounos appeared disinterested and disengaged

during team meetings.  On at least one occasion, Tsounos was
asked to complete SalesConnect technical activity reporting in
June and did not complete the activity reporting for several
months. Zombo had to follow up with him in October and
November to ask about the status of the report. Despite having
the information necessary to complete the report, Tsounos just
had not completed it."

38.     The documents and ESI that support, reflect or relate to your assertions to the

EEOC that:

"Tsounos also scored a medium on leadership.  In contrast with
some of his peers, Tsounos was not a self-starter.   He would
frequently look for direction from peers  and  managers regarding
next steps on client issues. In essence, while he might have been
a decent "doer," he failed to have the traits of a leader, which
IBM wanted from the Presales Technical Specialists."

39.     The documents and ESI that support, reflect or relate to your assertions to the

EEOC that:

"Zombo compared Tsounos's scores in these categories against
the scores of the other three members of his team.  Zombo noted
Tsounos  was  a  mediocre Presales Technical Specialist on  a  team
that  was successful enough  that it could  mask  Tsounos's
mediocrity.   In essence, Tsounos was able to capitalize on the
success of his peers, rather than driving the business forward
himself."

40.     The documents and ESI, including those that reflect Zombo's reasoning or

decisional process, that support, reflect or relate to your assertions to the EEOC that:

"Ultimately, Zombo selected Tsounos and one other Presales
Technical Specialist from his team for reduction.  Both Tsounos
and the other Presales Technical Specialist who were selected for
reduction were given overall evaluations of medium, while the two
team members who were retailed both scored as high."

41.     The documents and ESI that support, reflect or relate to your assertion to the

EEOC that:  "Tsounos's selection was finalized by mid-April  2016."

42.     The documents and ESI that support, reflect or relate to Plaintiff's applications for other employment with IBM following his selection for termination and the positions to which Plaintiff applied.

43.     With respect to your assertion to the EEOC that:

"Eight of the requisitions Tsounos applied for were cancelled or placed on hold, without any candidates selected for hire.  In considering Tsounos for the remaining three requisitions, IBM determined that he was not the most qualified candidate."

a.      Produce all job advertisements, job descriptions and job qualifications for each of the eleven positions for which Plaintiff applied, separately classifying those placed on hold or cancelled, and those IBM filled;

b.      Produce all documents and ESI referencing or relating to IBM's decision to cancel or place on hold the eight requisitions, including its reasons for same;

c.      Produce all applications, resumes and other documents and ESI associated or generated in connection with any application for each of the eleven positions for which Plaintiff applied, including all hiring process documents and ESI; and,

d.      Produce all hiring documents and ESI for any person IBM hired for any of the eleven positions for which Plaintiff applied.

44.     From January 1, 2013 to the present, all documents and ESI, including emails, instant messages, chat room communications, text messages, PowerPoint slides, pdf files, videos and other information wherein any IBM executive, manager or supervisor discusses Millennials, IBM's hiring of Millennials, #IBMillennial, the Millennial Corps or IBM's strategy or efforts to recruit, attract, engage and/or retain Millennials, irrespective of whether the term "Millennial" is used in such documents or ESI.

45.     All documents and ESI, including emails, instant messages, chat room communications, text messages, PowerPoint slides, pdf files, videos and other information

wherein any IBM executive, manager or supervisor discusses IBM's efforts to advertise or market to Millennials.

46.     All documents, ESI and communications reflecting or relating to IBM's efforts to internally and externally brand to Millennials, or members of the Millennial Generation, whether as prospective employees, current employees, prospective IBM customers, current IBM customers, or as members of the public.

47.     For the period from November 1, 2014 through the date Plaintiff was separated from employment, all documents and ESI that explain or set forth IBM's compensation system and band system for non-executive employees, including how bonuses, commissions, cash awards and other forms of merit pay are earned.

48.     A detailed organizational chart of IBM showing its major business units in 2014, 2015 and 2016 and proceeding in specificity to IBM's most particularized organizational unit.

49.     From January 1, 2012 to the present, all internal studies of IBM's existing workforce or desired workforce that examine employees by age, generation, length of service, graduation date or expected date of retirement.

50.     The document entitled "Millennials: How IBM can effectively attract, engage, and retain this emerging generation," and all communications about it from 2014 to the present.

51.     The Infographic entitled "Millennials – Attract. Engage. Retain." and all communications about it from 2014 to the present.

52.     All written and electronic materials presented or generated at IBM's 2014 Conference "The Millennial Experience" and/or "Reinvention in the Age of the Millennial," and all communications that refer or relate to said conference.

53.     All contracts and spec sheets for services pertaining to any contract IBM executed with any third party, including ProMazo, for the purpose of recruiting Millennials, advertising to Millennials, marketing to Millennials or branding to Millennials, and all communications generated in connection with the performance of such contracts by any IBM employee or any employee of the third-party vendor.

54.     All source materials, drafts, redlined versions, comments upon or critiques of IBM's publication "Myths, exaggerations and uncomfortable truths, The real story behind Millennials in the workplace," and press releases and communications that refer to or discuss said publication, including communications with third parties.

55.     To the extent not previously produced, all documents, ESI and communications that reference or relate to any research or study of Millennials or the Millennial generation for purposes of workforce planning, recruiting, hiring, retention, marketing, branding, advertising or selling IBM's products and services, whether conducted by IBM directly or by an outside vendor on IBM's behalf.

56.     Secure login credentials for IBM's RMA database for every RIF conducted in 2014, 2015 and 2016.[8]

57.     Secure login credentials for IBM's Corporate Employee Resource Information System ("CERIS") database.

58.     All folders, files and ESI currently or formerly residing in the following network locations:

      a.     https://w3-0 l.ibm.com/hr/web/sso/us/separations/, and

---

[8]     Plaintiff believes login credentials are the most efficient and least expensive way for Plaintiff to obtain access to relevant information in IBM's employment-related databases. Plaintiff's access can be appropriately limited to viewing, running reports, downloading and printing.

       b.      https://w3-0 l.ibm.com/hr/web/sso/us/separations/ra/,

and any sub-folders therein.

     59.     All documents, ESI and communications that describe the role of Resource

Managers in assisting in the implementation of any RIFs in 2016.

     60.     All documents and ESI that discuss or explain IBM's reason for creating

#IBMillennial.

     61.     All documents and ESI that discuss or explain IBM's reason for creating the

Millennial Corps.

     62.     All documents, ESI and communications that reflect or relate to IBM's efforts to

become a leader in Millennial engagement.

     63.     All documents, ESI and communications that reflect or relate to IBM's belief

conclusion that CAMS are driven by Millennial traits.

     64.     All documents, ESI and communications that reflect or relate to IBM's

understanding of "Millennial traits."

     65.     To the extent not previously produced, all notes, communications and records

referencing or relating to Zombo notifying Plaintiff that Plaintiff had been selected for reduction.

     66.     All documents and ESI that identify or discuss the competencies IBM required of

applicants or employees in 2014, 2015, 2016 and 2017 respectively, including all documents and

ESI that reflect IBM's research regarding employee competencies, and further including all

documents, ESI and communications wherein competencies were linked in any way to age, an

age group or a generation, or the actual or perceived traits of an age group or generation.

     67.     To the extent not previously produced, all documents and ESI governing or

describing IBM's PBC process as of January 1, 2016.

68.     The most current edition of "Agile Career Development, Lessons and Approaches from IBM."

69.     Secure login credentials for IBM's Expertise Taxonomy database.

70.     To the extent not previously produced, Plaintiff's complete Personnel Record, including all records of Plaintiff's annual compensation, including base salary and any merit pay, and his fringe benefits in each year of his employment with IBM.

71.     All documents, ESI and communications related to any study, analysis or assessment IBM or its agent conducted of every force reduction in the United States from January 1, 2014 through the end of 2016 to assess or determine whether older workers were or would be disparately impacted on the basis of age.

72.     All documents and ESI reflecting sales training provided to members of Plaintiff's Team but not provided to Plaintiff, including time at IBM's Global Sales School.

73.     All documents and ESI IBM will use in any deposition in this matter or at trial.

74.     All documents and ESI IBM receives in response to any subpoena issued in this matter.

75.     All emails, memoranda, meeting minutes, agendas, notes, directives, resolutions and other documents and ESI wherein IBM executives, HR professionals or managers with hiring/firing authority discussed IBM's need or strategy to recruit and employ persons of a particular age demographic or generation, such as Millennials, Generation Y, persons under the age of 40, "digital natives," and so on.

76.     All documents and ESI referencing, reflecting, analyzing, measuring or studying changes in the age demographics of IBM's United States workforce from January 1, 2013 through the present.

77.     All documents and ESI reflecting or referencing IBM's strategy to compete with companies such as Google, Microsoft, Apple, Amazon and other companies IBM deems to be competitors, to the extent such strategy relates to the ages of prospective IBM employees, current IBM employees, or the ages IBM's current or desired customers.

78.     All communications by IBM's Chief Marketing Officer, Chief Recruiting Officer, Chief Executive Officer, Chief Financial Officer, Director of Corporate Communications and by any Recruitment Leader for any IBM business unit or division, from January 1, 2014 to the present that reference or relate to the recruitment, hiring and/or retention of Millennials, digital natives, Generation Y (or any other term IBM uses to describe Millennials), or IBM's efforts to brand, advertise or market to Millennials, digital natives, Generation Y, etc.

79.     The complete Personnel Record of Ryan Zombo.

80.     To the extent not previously produced, documents/ESI reflecting the name, job title, college graduation year and age of each person on the Great Lakes Southeast Analytics technical sales team as of January 1, 2014, January 1, 2015, January 1, 2016 and January 1, 2017.

81.     To the extent not previously produced, all statistical analyses, reports and statistical data generated, analyzed, reviewed or considered reflecting information about any RIF conducted occurring in 2014, 2015 and 2016.

82.     With respect to the RIF that separated Plaintiff from employment, and to the extent not previously produced, the 2014 and 2015 PBCs for (a) all employees considered and selected for reduction, (b) all employees considered but not selected for reduction, and (c) all employees exempt or not considered for reduction.

83.    All Gearbox and Blue Matching results for Plaintiff following his selection for termination.

84.    To the extent not previously produced, all Checkpoint and ACE progress reviews and performance feedback provided to Plaintiff and all other persons reporting to Ryan Zombo from November 1, 2014 through August 30, 2016.

85.    Secure login credentials for IBM's COGNOS database.

86.    All User Manuals, guides, Q/A's and instructional materials for IBM's CERIS database, COGNOS database, RMA database, Expertise Taxonomy database, and every other database used to track, monitor, evaluate or otherwise compile demographic information about applicants for IBM employment and/or IBM employees.

87.    Your documents and ESI describing IBM's Global Sales School.

88.    All documents and ESI describing, and all communications by or to any IBM executive or human resources employee referencing or relating to IBM's campus/college/university recruiting programs in the United States, or IBM's internship or leadership/development programs in the United States (*e.g.*, Extreme Blue and Consulting by Degrees).

89.    To the extent not previously produced, all studies or research you have conducted, paid for, or adopted about Millennials, including the traits of Millennials.

90.    To the extent not previously produced, all studies or research you have conducted, paid for or adopted about Baby Boomers or older workers, including the traits of Baby Boomers or older workers.

91.    To the extent not previously produced, all studies or research you have conducted, paid for or adopted about Generation X, including the traits of members of Generation X.

48

92.     The interactive survey "How Millennial Are You?"

93.     Ryan Zombo's work calendar from January 1, 2014 through March 30, 2017.

94.     All documents and ESI reflecting, referencing or relating to IBM's research, development and use of the performance metrics of Relative Contribution (results compared to others with similar job responsibilities and band), What was achieved and how it was achieved, Results achieved against goals, Full scope of job responsibilities, Demonstration of IBM's values and foundational competencies, and People management (each as reflected on Plaintiff's 2015 PBC) to evaluate employee performance.

95.     To the extent not previously produced, all non-privileged communications regarding Plaintiff's termination, the reasons for Plaintiff's termination, and the process that led to Plaintiff's termination.

96.     All statements obtained from any witness regarding any of the subject matter alleged in this lawsuit.

97.     All warnings, discipline, corrective action provided to Plaintiff or any person against whom Plaintiff's performance was compared.

98.     All documents and ESI reflecting or generated in connection with any communications between or among Ryan Zombo and members of his team on or about May 19, 2016 in any way relating to a resource action.

99.     All documents and ESI regarding or referencing Zombo's decision to change Plaintiff's role to that of a Data Server TSS.

100.    All notes, documents and ESI prepared for or generated in connection with Zombo's PBC Meetings/Reviews of his team members for the calendar year 2015.

101.    The email sent to Plaintiff on or about May 23, 2016, subject [The Hoey Weekly]
- IBM Millennial Corps is over 4,000 strong, including the list of all recipients of the email.

102.    Notes, documents and ESI prepared for or generated in connection with any
meeting between Plaintiff and Zombo that occurred after Plaintiff was notified of his selection
for termination.

103.    A list or run of all employees by name, location, age and college graduation date
as of March 1, 2016 with a GroupID of S&D and JRSS of Client Technical Specialist: Analytics.

104.    All communications between Zombo and Jennifer Lavender regarding Plaintiff
and all notes, documents or ESI Lavender created regarding Plaintiff.

105.    All communications, documents and ESI referencing or relating to the Data
Server TSS role on Zombo's team.

106.    For each RIF taking place in the United States at any time from January 1, 2014
to the present, produce a report from CERIS (or other capable database) identifying the name or
code of the RIF, the date of the RIF, and further identifying:

      a.    The total number of employees, prior to the RIF, in the Decisional Unit, department or category of employees affected by the RIF;

      b.    The total number of employees age 39 or younger in the Decisional Unit, department or category of employees affected by the RIF immediately prior to the RIF;

      c.    The total number of employees, age 40 or older in the Decisional Unit, department or category of employees affected by the RIF immediately prior to the RIF;

      d.    The total number of employees, age 45 or older in the Decisional Unit, department or category of employees affected by the RIF immediately prior to the RIF;

      e.    The total number of employees, age 50 or older in the Decisional Unit department or category of employees affected by the RIF immediately prior to the RIF;

f.      The total number of employees, age 55 or older in the Decisional Unit department or category of employees affected by the RIF immediately prior to the RIF;

g.      The total number of employees in the Decisional Unit, department or category of employees affected by the RIF immediately prior to the RIF, that were considered for termination in the RIF;

h.      The total number of employees, age 39 or younger in the Decisional Unit, department or category of employees affected by the RIF that were considered for termination in the RIF;

i.      The total number of employees, age 40 or older in the Decisional Unit, department or category of employees affected by the RIF that were considered for termination in the RIF;

j.      The total number of employees, age 45 or older in the Decisional Unit, department or category of employees affected by the RIF that were considered for termination in the RIF;

k.      The total number of employees, age 50 or older in the Decisional Unit, department or category of employees affected by the RIF that were considered for termination in the RIF;

l.      The total number of employees, age 55 or older in the Decisional Unit department or category of employees affected by the RIF immediately that were considered for termination in the RIF;

m.      The total number of employees in the Decisional Unit, department or category of employees affected by the RIF that were selected for termination in the RIF;

n.      The total number of employees in the Decisional Unit, department or category of employees affected by the RIF immediately after the RIF;

o.      The total number of employees in the Decisional Unit, department or category of employees affected by the RIF that were age 39 or younger and selected for termination in the RIF;

p.      The total number of employees in the Decisional Unit, department or category of employees affected by the RIF age 40 or older and selected for termination in the RIF;

q.      The total number of employees in the Decisional Unit, department or category of employees affected by the RIF age 45 or older and selected for termination in the RIF;

r.      The total number of employees in the Decisional Unit, department or category of employees affected by the RIF that were age 50 or older and selected for termination in the RIF; and,

s.      The total number of employees in the Decisional Unit, department or category of employees affected by the RIF that were age 55 or older and selected for termination in the RIF.

107.    With respect to the positions of Analytics Technical Sales Specialist, Data Server Specialist, Analytics Client Architect, Analytics Operations Engineer, Security Senior Managing Consultant, Watson Health Regional Account Manager / Technical Sales Specialist, Watson Health Regional Sales Manager / Technical Sales Specialist, Watson Health Sales Engineer, and Watson Health Pre-Sales Consultant, and any similar positions, produce a report from CERIS or other capable database showing for each position:

a.      The number of applications for employment in the United States you have received from persons with college degrees under the age of 40 since January 1, 2014;

b.      The number of applicants for employment with college degrees under the age of 40 that you hired in the United States since January 1, 2014;

c.      The number of applications for employment in the United States you have received from persons with college degrees over the age of 40 since January 1, 2014;

d.      The number of applicants for employment with college degrees over the age of 40 that you hired in the United States since January 1, 2014;

e.      The number of applications for employment in the United States you have received from persons with college degrees over the age of 45 since January 1, 2014;

f.      The number of applicants for employment with college degrees over the age of 45 that you hired in the United States since January 1, 2014;

g.      The number of applications for employment in the United States you have received from persons with college degrees over the age of 50 since January 1, 2014;

h.      The number of applicants for employment with college degrees over the age of 50 that you hired in the United States since January 1, 2014;

i.      The number of applications for employment in the United States you have received from persons with college degrees over the age of 55 since January 1, 2014; and

j.      The number of applicants for employment with college degrees over the age of 55 that you hired in the United States since January 1, 2014.

108.    Produce a report from CERIS or other capable database identifying:

a.      The number of applications for employment in the United States you have received from persons with college degrees under the age of 40 since January 1, 2014;

b.      The number of applicants for employment with college degrees under the age of 40 that you hired in the United States since January 1, 2014;

c.      The number of applications for employment in the United States you have received from persons with college degrees over the age of 40 since January 1, 2014;

d.      The number of applicants for employment with college degrees over the age of 40 that you hired in the United States since January 1, 2014;

e.      The number of applications for employment in the United States you have received from persons with college degrees over the age of 45 since January 1, 2014;

f.      The number of applicants for employment with college degrees over the age of 45 that you hired in the United States since January 1, 2014;

g.      The number of applications for employment in the United States you have received from persons with college degrees over the age of 50 since January 1, 2014;

h.      The number of applicants for employment with college degrees over the age of 50 that you hired in the United States since January 1, 2014;

i.      The number of applications for employment in the United States you have received from persons with college degrees over the age of 55 since

January 1, 2014; and,

j.      The number of applicants for employment with college degrees over the age of 55 that you hired in the United States since January 1, 2014.

109.    Your written instructions or guidelines concerning how to search for, or who to contact, regarding potential work opportunities involving IBM in the United States, including, but not limited to, documents and ESI relating to instructions to search persons' online resume or work qualifications, personal websites, and/or databases (e.g., LinkedIn), and any qualifying or disqualifying criteria related to age, such as recency of graduation from college, proximity to expected retirement, or expected length of employment.

110.    Documents and ESI reflecting or referencing any preference for or against recruiting, hiring, staffing projects with, assigning work to, promoting/demoting, retaining/terminating, or otherwise employing individuals in the United States of particular ages or age generations.

111.    To the extent not previously produced, any and all documents that refer or relate to Plaintiff.

112.    To the extent not previously produced, your documents and ESI reflecting the salaries, commissions and bonuses earned by each person reporting to Ryan Zombo from November 1, 2014 to the present.

113.    To the extent not previously produced, the projections, targets, goals, quotas, and each employee's performance with respect to same, for each employee reporting to Ryan Zombo from November 1, 2014 to the present.

114.    To the extent not previously produced, your documents and ESI reflecting or identifying the names, titles and ages of any person who took over, began performing or

otherwise performed any of the job duties or functions performed by Plaintiff between November 1, 2014 and August 1, 2016.

115.    To the extent not previously produced, the job description of each employee who reported to Ryan Zombo at any time from November 1, 2014 to the present.

116.    To the extent not previously produced, all documents and ESI reflecting EEO training, instructions or guidance provided to any person involved in the decisionmaking process on Plaintiff's evaluation and selection for termination from employment.

117.    To the extent not previously produced, the resume or CV of each employee who reported to Ryan Zombo at any time from November 1, 2014 to the present.

118.    To the extent not previously produced, all documents and ESI regarding training or educational opportunities afforded to each person who reported to Ryan Zombo at any time from November 1, 2014 to the present.

119.    A statement of IBM's net worth in 2015, 2016 and 2017 respectively.

120.    To the extent not previously produced, all communications from any of Plaintiff's clients or customers, whether positive or negative, from November 1, 2014 through to the date of Plaintiff's selection for termination, that were sent to Plaintiff, Ryan Zombo or David Kevnick, that remarked or commented upon Plaintiff's performance.

121.    In connection with the 4-page advertisement IBM  ran in the A Section of the New York Times (print edition) on Monday, May 22, 2017, appearing at A11-A14, all communications that reference, discuss or describe how you selected the individuals whose photographs appear in the ad, including any documents or ESI that reference, discuss or describe age-based, generation-based, physical appearance-based, gender-based or race/color/ethnicity-

based selection criteria for the ad, and further produce all other documents and ESI referencing

or relating to IBM's branding/advertising initiative "THE RISE OF YOU" or "you$^{IBM}$."

      122.      For each RIF taking place in the United States at any time from January 1,

2014 to the present, produce a spreadsheet identifying by:

- Name, Address and Phone Number
- Business unit
- Business sub-unit
- Department
- Job band
- Pay grade
- Primary job category
- Secondary job category
- Job role/title
- Primary job duty
- Date of hire
- Year considered/selected/not selected for RIF
- Years of work experience prior to joining IBM
- Years of service with IBM
- Gross annual compensation including benefits
- Gross annual compensation not including benefits
- Base Salary
- Merit pay earned in year preceding RIF year
- Cost to IBM of providing healthcare
- Three most recent PBC ratings prior to RIF
- Factors and ratings for purposes of the RIF if different from PBC rating[9]
- Highest educational degree
- Years of post-secondary education
- Location (by State or region)
- Supervisor name/title
- Gender
- Race

---

[9]     You asserted in your EEOC Position Statement that "When reviewing employees for possible reduction, IBM considered the following factors: sales, technical experience, communication and leadership." You further asserted that employees considered for termination were assigned ratings of low, medium or high on each of these factors. To the extent these assertions are true, your response should include these factors, and the ratings assigned on each factor for each employee considered and selected for termination and each employee considered but not selected for termination.

56

- Serial number
- RIF ranking if employees were ranked
- College graduation year
- Years to expected retirement
- Age
- Number of years in the protected age group

a.  All employees considered and selected for reduction,

b.  All employees considered but not selected for reduction, and,

c.  All employees not considered or exempt from reduction.

If you contend that additional predictor variables are required to validly model the probability of termination as a function of age, identify all such predictor variables, explain the bases of your contention(s), and include those variables and their data fields in your answer to this Interrogatory.[10]

Respectfully submitted,

_(signature)_

_____
Charles A. Lamberton, Esq.
Lamberton Law Firm, LLC
Pa. I.D. No. 78043
707 Grant Street
The Gulf Tower. Suite 1705
Pittsburgh, PA  15219
412-258-2250 - O
412-498-4120 - C (24/7)
cal@lambertonlaw.com

_____

[10]  Statistical patterns are relevant to pretext in individual disparate treatment ADEA cases. *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 766-767 (3rd Cir. 1989).  *See also*, Model Civil Jury Instructions for the Third Circuit Court of Appeals, Chapter 8, § 8.1.1 - Elements of an ADEA Claim - Disparate Treatment ("Statistics are one form of evidence that you may consider when deciding whether a defendant intentionally discriminated against a plaintiff.");  *Karlo et al. v. Pittsburgh Glass Works*, LLC, No. 15-3455, --- F.3d ---, 2017 WL 83385 *10 (3rd Cir. 2017) (discussing statistical techniques in ADEA cases including logistical regression).

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of this document has been served via electronic mail

on all counsel of record.


s/ Charles A. Lamberton
Lamberton Law Firm, LLC
Pa. I.D. No. 78043
1705 Gulf Tower
Pittsburgh, PA  15219
412-258-2250 - O
412-498-4120 - C (24/7)
cal@lambertonlaw.com

Counsel for Plaintiff
May 30, 2017

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANDREW G. TSOUNOS,** | ) | **Civil Action No. 17-409** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Hon. David R. Cercone** |
| **vs.** | ) | |
| | ) | |
| **INTERNATIONAL BUSINESS** | ) | |
| **MACHINES CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____/ | | |

**PLAINTIFFS' SECOND SET OF
<u>REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT</u>**

Plaintiff incorporates herein the Instructions and Definitions from Plaintiff's First Set of Requests for Production of Documents and ESI directed to Defendant.

123.    To the extent not previously produced, for the period from January 1, 2012 to the present, any and all research, studies, surveys, assessments and company culture assessments IBM conducted or paid for with respect to its employment branding.

124.    For the period from January 1, 2014 to the present, all documents, ESI and communications that reference, discuss or relate to the design, photography, videography, purposes, messaging or brand communication of IBM's Careers page.

125.    For the period from January 1, 2014 to the present, all documents, ESI and communications that reference, discuss or relate to the design, photography, videography, purposes, messaging or brand communication of IBM's LinkedIn page.

126.    For the period from January 1, 2014 to the present, all documents, ESI and communications that reference, discuss or relate to the design, videography, purposes, messaging

or brand communication of the videos selected for inclusion on IBM's Global Jobs YouTube page.

127.    For the period from January 1, 2014 to the present, all communications by any person employed in IBM's Marketing Department that reference or relate to IBM's actual or desired employment brand, age, any age group or generation, or the actual or perceived traits of any age group or generation.

Respectfully submitted,

_____
Charles A. Lamberton, Esq.
Lamberton Law Firm, LLC
Pa. I.D. No. 78043
707 Grant Street
The Gulf Tower. Suite 1705
Pittsburgh, PA  15219
412-258-2250 - O
412-498-4120 - C (24/7)
cal@lambertonlaw.com

2

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of this document has been served via electronic mail

on all counsel of record.


s/ Charles A. Lamberton
Lamberton Law Firm, LLC
Pa. I.D. No. 78043
1705 Gulf Tower
Pittsburgh, PA  15219
412-258-2250 - O
412-498-4120 - C (24/7)
cal@lambertonlaw.com

Counsel for Plaintiff
July 17, 2017

3